ESTATE OF BOIES C. HART, DECEASED, CITY BANK FARMERS TRUST COMPANY, EXECUTOR, AND ELOISE GRAYSTON HART, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13441.   Promulgated July 7, 1948.

*W. A. Patty, Esq.*, for the petitioners.
*Sheldon V. Ekman, Esq.*, for the respondent.

### OPINION.

HARLAN, *Judge*: The Commissioner determined a deficiency in income tax for the year 1943 in the amount of $2,406.79. Both the 1942 and 1943 taxable years are involved by reason of the Current Tax Payment Act. The question before us is whether petitioners are entitled to deduct the amount of premiums paid by decedent, Boies C. Hart, in 1942 and 1943, on policies of insurance on his own life, as alimony under sections 22 (k) and 23 (u), Internal Revenue Code.

All of the facts herein are stipulated, and as stipulated the facts are adopted.

The petitioner, Eloise Grayston Hart, resides in New York City. City Bank Farmers Trust Co., of New York City, is the duly appointed, qualified and acting executor of the last will and testament of Boies C. Hart, deceased, who died June 15, 1946. The City Bank Farmers Trust Co. is a trust company organized under the laws of New York, with its principal office in New York City.

Joint returns for 1942 and 1943 were filed by Boies C. Hart and Eloise Grayston Hart with the collector of internal revenue for the district of Maryland.

Boies C. Hart and his former wife, Ruth H. Hart, were married on December 30, 1909, and their son Boies C. Hart, Jr., was born August 27, 1913.

In 1933 Boies C. Hart created an unfunded insurance trust of life insurance policies having an aggregate face value of $200,000.

Article first of the trust agreement reserved to the settlor all rights granted him as the insured under policies of insurance in the trust as though the trust agreement had not been made.

Article second of the trust agreement reads in part as follows:

The Trustee's duties, as Trustee, with respect to the disposition of the income and principal of the trust fund, shall be:

A. During the lives of the Settlor's wife, RUTH HIGBY HART, and his son, BOIES C. HART, JR., and during the life of the survivor of them, which period shall constitute the term of this trust, to dispose of the income and principal thereof as follows:

(1) During the life of the Settlor's said wife, to apply two-thirds of the income thereof, or in the event of her remarriage, one-third of the income thereof, to her use, and to apply the remaining income in equal shares per stirpes to the use of the Settlor's descendants from time to time surviving, or in the event of the death of all of his descendants, to the use of the Settlor's mother, CLARA E. HART, or in the event of the death of the Settlor's mother, to the use of his brother, HENRY HART: in the event of the death of all of the Settlor's descendants, his mother and his said brother, to apply the entire income to the use of the Settlor's said wife, whether or not she shall have remarried, during the remainder of her life.

Then follow provisions for the operation of said trust after the death of Ruth H. Hart, material portions of which are that the income is payable to Boies C. Hart's mother and descendants in the prescribed proportions and for distributions of the principal to the beneficiaries at various times. Upon the death of the survivor of Ruth H. Hart and Boies C. Hart, Jr., if Boies C. Hart should be still living, the principal to be payable to him; in the event of his prior death the principal to be payable to his mother and her descendants.

Article third of the trust agreement provides in part as follows:

After the Settlor's death, the Trustee may apply to the use of the Settlor's said wife, and his descendants, or any of them, so much of the principal of the trust, and at such time or times, as in its discretion it may deem advisable for their proper education, care, comfort or support. Any amounts so applied to the use of any descendant shall be charged against or deducted from the principal of any share then or thereafter set apart for such descendant, or his or her parent or descendants.

Article tenth provides that the settlor may "amend or revoke this trust in whole or in part."

In February 1934 Ruth H. Hart, as party of the first part, and Boies C. Hart, as party of the second part, entered into a written separation agreement whereby he agreed, in sections 5 and 6 thereof, to pay his wife, in monthly installments, $9,528 per annum, unless and until she remarried, when said payments would be reduced by two-thirds, and in addition thereto he agreed to make payments to provide for the education of Boies C. Hart, Jr. It was also agreed that, in the event Boies C. Hart's income should fall below $25,000 per year, he could reduce the amount of insurance held by the trust.

Paragraph 7 of the agreement provided as follows:

The payments required to be made by the party of the second part to the party of the first part in accordance with the provisions of paragraphs 5 and 6 hereof shall in no event, subsequent to June 30, 1935, exceed one-half of the net income of the party of the second part and it is hereby expressly agreed that the term "net income" as used herein shall mean the gross income of the party of the second part less only (a) the net amount paid by the party of the second part as premiums for his life insurance (i. e. deducting from the gross premiums the current dividends received in each case by the party of the second part from the several insurance companies) referred to in paragraph 9 hereof. * * *

Paragraph 9 of the agreement provided as follows:

The party of the second part agrees and undertakes to maintain in full force and effect life insurance in the sum of $200,000, * * * and the party of the second part further agrees and undertakes that the provisions of said trust agreement in respect to the party of the first part and said Boies C. Hart, Jr. shall not be changed, amended or altered in any way without the prior agreement expressed in writing to such change by the said party of the first part and the said Boies C. Hart, Jr., provided, however, that in the event the payments made to the party of the first part pursuant to the provisions of paragraph 5 hereof are below $9,528 per annum, the party of the first part is hereby empowered to require the party of the second part to reduce his life insurance to any amount not less than $100,000 and further provided in like event that the party of the first part and said Boies C. Hart, Jr. jointly are hereby empowered to require the party of the second part to reduce his life insurance to any amount below $100,000 and the party of the second part hereby agrees to reduce or cause to be reduced his life insurance in accordance with the foregoing, upon written instruction addressed to the party of the second part so to do from the party of the first part or from the party of the first part and said Boies C. Hart, Jr., jointly, as the case may be.

It is further agreed that in the event of the reduction in the gross income of the party of the second part to an amount less than $25,000, the party of the second part shall have the right to reduce the amount of insurance by a reduction in the amount of premium paid proportionate to the amount which the reduction of the said income of the party of the second part bears to the income of the party of the second part prior to said reduction, and further provided that said Boies C. Hart, Jr., agrees in writing to the said reduction in the amount of the insurance.

On July 22, 1935, Boies C. Hart, with the consent of Ruth H. Hart and Boies C. Hart, Jr., reduced the amount of insurance in the trust to $100,000 and Boies C. Hart assigned $336.25 of his monthly salary to a trustee for the purpose of providing the fund to pay the insurance premiums.

In 1935 Boies C. Hart procured a divorce in Nevada from Ruth H. Hart, in which decree no provision was made for a division of property because, as stated in the decree, "the parties hereto have agreed upon and made a full settlement."

Thereafter Boies C. Hart married Eloise Grayston Hart, one of the

petitioners herein, who is his surviving widow. He then instructed the trustee to amend the trust agreement by inserting the name of Eloise Grayston Hart in article second of said agreement in every instance where his mother's name had appeared and instructed the trustee to insert the name of Eloise Grayston Hart for Ruth H. Hart in article third, which permitted the trustee to invade the principal after the settlor's death. In 1945, however, he revoked both of these attempted amendments.

In January 1938 Ruth H. Hart and Boies C. Hart, Jr., requested Boies C. Hart to decrease the face amount of insurance from $100,000 to $75,000. In March 1938 Boies C. Hart and Ruth H. Hart agreed to certain changes in their former property settlement agreement, and a suit was filed in the Supreme Court of New York for the County of New York by Ruth H. Hart against Boies C. Hart and Eloise Grayston Hart, seeking a modification of the property settlement in compliance with their subsequent agreement. In the decree it was provided in part as follows:

(a) Defendant, Boies C. Hart, will pay to, for or on behalf of plaintiff, Ruth H. Hart, commencing January 1, 1938, and plaintiff, Ruth H. Hart, will accept, commencing January 1, 1938, a sum equal to 38.5% of the defendant's income * * *, but in no event shall defendant, Boies C. Hart, be obligated to pay to, for or on behalf of plaintiff, Ruth H. Hart, or shall plaintiff, Ruth H. Hart, be entitled to receive, more than $11,000.00 per year.

(b) Said sum shall include all payments to be made by defendant, Boies C. Hart, for or on account of any insurance that is now carried by defendant, Boies C. Hart, upon his life under an insurance Trust with the City Bank-Farmers Trust Company for the benefit of said Ruth H. Hart and their son, Boies C. Hart, Jr., to the end that any payments that may be made by defendant, Boies C. Hart, by way of net premiums upon said insurance shall be deducted from the sum to be paid to, for or on behalf of plaintiff, Ruth H. Hart, under the provisions of subdivision (a) of this paragraph; and for the purpose of the carrying out of the terms of this stipulation, plaintiff, Ruth H. Hart, will procure the abrogation of the agreement made July 22, 1935, between Boies C. Hart and William L. Hanaway, to which abrogation defendant, Boies C. Hart, does hereby consent.

Should the plaintiff, Ruth H. Hart, desire to decrease the amount of said insurance, she may do so to the extent that the amount of insurance that will be carried for the benefit of said Ruth H. Hart and their son, Boies C. Hart, Jr., shall not be less than the sum of $50,000.00, except with the consent of defendant, Boies C. Hart. But the consent of the son, Boies C. Hart, Jr., shall be obtained for any reduction. In the event of any reduction, the cash surrender value of such part of the insurance now being carried as aforesaid shall inure to the benefit of defendant, Boies C. Hart.

(c) Said sum to be paid by defendant, Boies C. Hart, to, for or on behalf of plaintiff, Ruth H. Hart, after the payment of premiums upon such life insurance as he shall carry upon his life for the benefit of plaintiff, Ruth H. Hart, and their son, Boies C. Hart, Jr., shall be in equal monthly installments as nearly as possible. * * *

Boies C. Hart died on June 15, 1946, and Ruth H. Hart is now receiving two-thirds of the income of the aforementioned trust.

During the year 1942, pursuant to said decree, Boies C. Hart paid to Ruth H. Hart $8,377.12 in cash and paid premiums on the insurance policies held in trust in the amount of $2,523.75.

During the year 1943, pursuant to said decree, Boies C. Hart paid to Ruth H. Hart $8,575.36 in cash, and paid premiums on the insurance policies held in trust in the amount of $2,533.75.

In her Federal income tax return for 1942, Ruth H. Hart reported in line 10, "Income (or loss) from partnerships; fiduciary income; and other income. (From Schedule I)," the amount of $10,900.87. She made no entry under schedule I on the return.

In her Federal income tax return for 1943, Ruth H. Hart reported as alimony received during the year $8,575.38.

The insurance held in trust from March 8, 1936, to the date of Boies C. Hart's death consisted of two ordinary life insurance policies of an aggregate principal amount of $75,000. On March 8, 1938, these policies had an aggregate cash surrender value of $10,156.

If the insurance premiums paid by Boies C. Hart were constructively received by Ruth Hart and were includible in her taxable income under the provisions of section 22 (k) of the Internal Revenue Code,[1]

---

[1] SEC. 22. GROSS INCOME.

\*     \*     \*     \*     \*     \*     \*

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In case any such periodic payment is less than the amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument, but only to the extent that such installment payment for the taxable year of the wife (or if more than one such installment payment for such taxable year is received during such taxable year, the aggregate of such installment payments) does not exceed 10 per centum of such principal sum. For the purposes of the preceding sentence, the portion of a payment of the principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be considered an installment payment for the taxable year in which it is received. (In cases where such periodic payments are attributable to property of an estate or property held in trust, see section 171 (b).)

such premiums were deductible from Boies C. Hart's gross income under the provisions of section 23 (u) of the code.[2]

The decree in the New York Supreme Court which modified the Hart separation agreement to conform to the subsequent oral agreement of the parties provides that:

Defendant, Boies C. Hart, will pay to, for or on behalf of plaintiff, Ruth H. Hart, * * * and plaintiff, Ruth H. Hart, will accept, * * * a sum equal to 38.5% of defendant's income. * * * Said sum shall include all payments to be made by defendant, Boies C. Hart, for or on account of any insurance that is now carried by defendant, Boies C. Hart, upon his life under an insurance trust * * * for the benefit of Ruth H. Hart and their son, Boies C. Hart, Jr. * * *

Regardless of the agreement of the parties and the decree that the sums paid by Boies for insurance premiums shall be a part of the total amount "paid to, for or on behalf of" Ruth, the Commissioner denies that the insurance premiums were paid for or on behalf of Ruth, because:

She did not receive the premiums.
Her possibility of benefit from the premium payments was too remote.
Others besides Ruth were beneficiaries of the insurance contract.
The trustee could invade the trust corpus for the benefit of others than Ruth.
The settlor reserved powers to alter, amend, or revoke the trust agreement.

The Commissioner does not question the deductibility of all other payments made by Boies C. Hart to Ruth H. Hart under the original property settlement before the Nevada divorce as such settlement was modified by a subsequent agreement of the parties and approved by the Supreme Court of New York County as so modified. Such payments are agreed to be taxable to Ruth and deductible by Boies from his taxable income.

As to the Commissioner's objection to the deduction of the amounts paid by Boies for insurance premiums, we find ourselves in disagreement with the Commissioner's contention, either on the basic facts or his legal conclusions. It is true that the premiums were not actually paid to Ruth, but prior to the New York decree they had been paid to a trustee by virtue of an assignment of part of Boies Hart's income. Furthermore, these payments were officially designated in said decree to be a part of the 38½ per cent of Hart's income which was allocated to the use of Mrs. Hart.

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

* * * * * * *
(u) ALIMONY, ETC., PAYMENT.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

Also, the agreement provided that, when the cash payment to Mrs. Hart should become reduced beyond a certain amount she, with her son's concurrence, could direct Hart to reduce the amount payable in premiums, and in this way she could increase the amount payable to her in cash.

Under such facts we can not say that these premium payments were not made by Hart for the benefit and on behalf of Ruth.

The remoteness of the possibility of benefit to Ruth Hart results from the necessity of the death of Boies before the occurrence of income benefit to Ruth; the fact that her remarriage would reduce the benefits by one-half; and the fact that the face amount of the insurance might be reduced. As to the necessity of Hart's death, the same uncertainty follows every annuity based upon the life of another, and such annuities have a definite computable value. They are constantly recognized as conferring definite benefits upon the prospective annuitant. The remaining two contingencies are wholly under the control of the annuitant herself, and, if she should wish to dispose of her annuity in any way, it is a privilege which was a part of the original agreement accepted by her. She certainly could not now set up such possible contingencies as avoiding her tax liability for the amount of the premium payments.

The fact that others benefited by the provisions of the trust agreement is adequately covered by the Commissioner's own regulations. Section 29.22 (k)–1 (*d*) of Regulations 111 reads in part as follows:

Except in cases of a designated amount or portion for the support of the husband's minor children, periodic payments described in section 22 (k), received by the wife for herself and any other person or persons are includible in whole in the wife's income, whether or not the amount or portion for such other person or persons is designated.

The provision in the trust agreement that after the settlor's death the trustee might invade the corpus of the trust for the use of the settlor's wife or descendants is set forth in the printed part of the trust agreement form. It was not a part of the typewritten provisions therein. It is evidently a provision to care for an unforeseeable emergency. The only "descendants" mentioned in the record are Henry Hart, a brother, concerning whom the record is blank, and Boies C. Hart, Jr., a son who was twenty-nine years of age in 1942. There is nothing in the record to indicate a real possibility of invasion of the trust for these "descendants," and if the trustee were to do so, either arbitrarily or to an extent to defeat the main purpose of the entire trust agreement as set forth in the typewritten portion thereof, which was to supply an annual income for Ruth Hart after Boies Hart's death, there is little doubt that a court of equity would prevent such an abuse of trust.

It is to be noted that the amounts so advanced to any descendants shall be deducted from the principal of any share coming to such descendants under the trust agreement. Obviously, it was the intention of the trustor that the amount of such invasion should not greatly exceed the ultimate share from which it was to be "deducted."

The Commissioner's contention that the settlor's reservation of the power to revoke or amend the trust made the benefits to the annuitant too remote for computation is adequately answered by the provisions of the separation agreement, approved by the New York Supreme Court decree, that the settlor should not exercise that power. His attempt to amend the agreement after his second marriage obviously violated this separation agreement and decree and doubtless would have been annulled in court. His subsequent revocation of this attempted amendment would seem to indicate that he was probably attempting to correct his error.

This Court has had before it cases on facts sufficiently similar to those at bar to furnish a foundation for our conclusion. *Richard R. Deupree*, 1 T. C. 113 (1942), is helpful on the question as to whether or not the money paid by Boies was constructively received by Ruth. In the *Deupree* case the taxpayer was president of a company which voted a bonus to certain employees to be designated by the president, but the employees at no time had any contractual rights to demand the payment of the bonus. In 1939 Deupree arranged with the company that his bonus, to the extent of $50,000, should be expended by the company to purchase for Deupree a single premium annuity contract, with payments to begin at age 70 and with a provision for death benefits to a beneficiary in the event of Deupree's death. The Court held that Deupree was in constructive receipt of the $50,000, although he never had a legal right to demand its payment and never in fact received it himself.

The Court cited, with approval, Paul and Mertens, vol. 1, sec. 9.12, which states, "one of the leading examples of income constructively received is furnished by transactions in which items of income (the proceeds of the sale of property or compensation for services rendered or some other type of income) are paid to a third party designated by the taxpayer."

In the case at bar the parties agreed that Ruth should receive 38½ per cent of Boies' income and that out of this percentage a certain amount should be deducted by Boies for the payment of insurance premiums. Our situation herein is quite similar to the agreement between Deupree and his employer corporation.

In *Benton K. Brodie*, 1 T. C. 275, we have the same set of facts as in the *Deupree* case, except that the taxpayer was not consulted by his employer as to the purchase of an annuity. The company merely

granted the bonus, used it to buy the annuity contract, and gave the policy to the taxpayer, who accepted it. The Court held that by such acceptance the taxpayer should be taxed with the constructive receipt of the amount of the premium. In the case at bar the admitted facts show that Ruth voluntarily accepted the benefits of the insurance policies and the decree of the court states that the premium for the same shall be paid out of the amount which "Ruth H. Hart will accept."

In *Anita Q. Stewart*, 9 T. C. 195, the taxpayer and her husband entered into a separation agreement, whereby the husband assigned to his wife an insurance policy on his life and agreed to pay the premiums. A divorce was procured and all the requirements of section 22 (k) of the code were complied with. This Court held that the premium payments made by the husband were includible in the taxable income of the wife. The only material difference between the *Stewart* case and the one at bar is that the immediate benefits to Anita Stewart were greater than those inuring to Ruth Hart. Anita Stewart had all of the immediate benefits of the insured under the policy, while the only immediate benefit received by Ruth Hart was the privilege of reducing the quantity of insurance and in this way diverting a part of the cash premium which she in turn received in cash. Nevertheless, these limited immediate benefits were acceptable to Ruth. She was under no compulsion to take them. She evidently considered the limited immediate benefits received by her in conjunction with the prospective benefits of a secure income after her husband's death to be of substantial value to her. Therefore, we can see no reason under the precedents and the applicable statutes why she should not include the costs of these benefits in her taxable income.

That insurance benefits wholly contingent to the beneficiary upon the death of the insured are a matter of real present value is strongly indicated in *Grace R. Seligmann*, 9 T. C. 191. In that case the husband assigned insurance policies to a trust, with the wife and her two children as beneficiaries. The wife had no immediate privilege growing out of the insurance contract and under the trust agreement she was prevented from encumbering, alienating, or assigning her contingent interest. Her husband, the settlor, failed to pay the insurance premiums to the trustee and Mrs. Seligmann paid them out of her own income. The Commissioner contended that such payments were taxable as a gift to the husband. The Court, however, held that the payments were made for the benefit of protecting the wholly contingent interest of the beneficiaries, including the wife herself; and that there was no taxable gift to the husband. This case would clearly indicate that a purely contingent insurance interest such as that held by Ruth Hart herein is a thing of value and that any payment made

to protect that contingent interest would inure to the benefit of the owner thereof. It is, therefore, our holding that the insurance payments made by Boies C. Hart in the taxable years herein involved were paid to the insurance company by Hart as the result of an agreement with his wife; that they constituted constructive income to her and were made for her benefit and on her behalf; and that they are taxable in her gross income and deductible from the taxable income of the petitioner herein.

Reviewed by the Court.

*Decision will be entered for the petitioners.*