MEYER BLUMENTHAL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19157. Promulgated July 13, 1949.

*Sanford D. Beecher, Esq.*, and *Herbert W. Reisner, Esq.*, for the petitioner.

*Stanley W. Herzfeld, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $1,370.14 in income tax for 1945. The only issue for decision is whether the Commissioner erred in disallowing a deduction of $2,244.63 representing insurance premiums alleged to represent alimony payments deductible under section 23 (u) of the Internal Revenue Code. The facts have been stipulated.

The petitioner filed his income tax return for 1945 with the collector of internal revenue for the first district of Pennsylvania.

The petitioner and his former wife, Sara, were married in 1917. They had three children.

The petitioner and Sara entered into a written agreement of separation on February 14, 1936. The petitioner agreed to pay to Sara for her support and maintenance until her death or remarriage, whichever should first occur, $100 each week, plus an additional $20 each week for each child during its minority and while residing with her. The petitioner agreed to deliver certain policies of insurance on his life to a bank and to designate Sara as irrevocable beneficiary until her death or lawful remarriage, whichever should first occur, for the purpose of further securing and protecting Sara in the payments to be made to her for her sole support in the event of the death of the petitioner and in consideration of her waiving all interest in his estate. The policies were to be assigned "in order to provide payment by the insurance company or companies to her of the avails, either income or principal, of the said policies, not exceeding Fifty-two Hundred Dollars ($5200.) per annum," but in case of her death or remarriage the remaining avails of the policies were to be distributed as the petitioner should direct. The petitioner promised and agreed that he would maintain the payment of the premiums on the policies. Loans on the policies were to be restricted to those for the purpose of paying premiums unpaid after 20 days.

Sara instituted an action for absolute divorce against the petitioner in New York prior to February 14, 1936, and was granted a divorce from the petitioner on May 4, 1936. It was ordered in the decree that Sara was entitled for her support and maintenance to receive from the petitioner $100 per week until her death or lawful remarriage, and as security for the payments the petitioner was required to assign his salary, dividends, and bonuses from Blumenthal Brothers and to deliver "for the purpose of securing and protecting the plaintiff in the payments to be made for her sole support as herein provided, in the event of the death of defendant, and in consideration of her waiving all her right and interest" in the petitioner's estate, policies of life insurance on his life in the amount of $65,000 to the Tradesmens National Bank & Trust Co. of Philadelphia, "to be held by it as custodian for the purpose of carrying out the terms hereof, and plaintiff is entitled to be named in said life insurance policies as irrevocable beneficiary for her life or until her death or lawful remarriage, whichever should first occur, in order to provide payment by said insurance company or companies to plaintiff of the avails of either income or principal of said policies, not exceeding Fifty-two hundred ($5200.) Dollars per annum, payable at her option in quarterly or more frequent instalments; upon the death or remarriage of plaintiff, the remaining avails of said policies, either income or principal, to be distributed in such manner as the defendant should direct; plaintiff is entitled to have the defendant maintain the premiums on said policies of

insurance and to assure and protect her in that regard, is entitled to have defendant execute any instruments necessary to permit the plaintiff to make loans on said policies limiting such loans however to the purpose of paying premiums upon said policies which should not have been paid for twenty days after due date, and directing said insurance companies to transmit to plaintiff premium notices simultaneously with the transmission thereof to defendant; so long as the plaintiff should have any interest in said policies, defendant not to make or attempt to make any loans upon, or otherwise encumber, any of said policies of life insurance."

The petitioner was entitled to replace the policies by others. The decree also embodied the agreement of February 14, 1936. The judgment was to become final within three months and it did become final on August 5, 1936. The provisions of the agreement and of the decree of divorce were carried out.

The petitioner paid premiums of $2,156.15 in 1945 on the insurance policies mentioned in the agreement and decree. He claimed a deduction of $2,244.63 on his return for 1945, representing insurance premiums paid on the policies. The Commissioner, in determining the deficiency, disallowed the deduction in its entirety, although he allowed the payments of $5,200 as deductions.

The petitioner contends that the actual premiums paid during 1945 in the amount of $2,156.15, are deductible by him under section 23 (u). That section as it applies to the taxable year is entitled "Alimony, Etc., Payments" and provides that a husband described in section 22 (k) may deduct on his return amounts includible in the gross income of his wife under section 22 (k) which are paid within the taxable year. Section 22 (k), entitled "Alimony, Etc., Income," provides that there shall be included in the gross income of a divorced wife periodic payments received subsequent to the decree "in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce * * *." The petitioner relies upon the case of *Estate of Boies C. Hart*, 11 T. C. 16.

The Commissioner argued unsuccessfully in that case, and it could be argued here, that the wife did not actually receive the premiums, she was not the sole beneficiary, and the premiums did not benefit her alone or even persons of her choice, there was no certainty that she would ever benefit from the policies, and, therefore, why should any part, let alone all, of the premiums be taxed to her? It could also be argued that the premiums built up an estate for the husband out of which his former wife might be supported after his death, in contrast

to alimony payments during their joint lives, and out of which others of his choice might also benefit. Therefore, the ex-wife should not report, and he should not deduct, the amounts.

There are differences between the *Hart* case, in which the Commissioner argued in vain, and the present case. There Ruth Hart agreed to take as alimony payments 38½ per cent of the petitioner's annual income, and it was further agreed that the insurance premiums were to be paid out of and substracted from that agreed percentage of his income. Thus, she was constructively receiving the full 38½ per cent and paying the premiums. She and her son were to receive the full benefit of the insurance trust during their joint lives, and corpus could be invaded for their benefit. She and her son could cause, and they did cause, the insurance to be reduced, thus increasing the portion of the annual payments which she was to receive in cash. Here, in contrast, the petitioner was to pay the insurance premiums out of his own funds in addition to paying a fixed amount to Sara, and Sara was to get no more than $5,200 annually out of the avails of the insurance. These differences serve to distinguish the cases, so that the *Hart* case is not authority for the present case, and it is held that the petitioner, who has the burden of proof, has not shown that the premiums paid in this case are deductible under section 23 (u).

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

Harlan, *J.*, dissenting: I dissent from the majority opinion herein for the reason that I am unable to accept its reasoning and also can see no substantial distinction between this case and *Estate of Boies C. Hart*, 11 T. C. 16, in any determinative fact.

The majority opinion is disturbed because the insurance policy might inure to the benefit of others than the divorced spouse. Under the facts herein, that could only occur by the death or remarriage of the divorced spouse. It is our opinion that if the divorced spouse receives an annuity during her entire life from the insurance policy after her agreement so to do has been scrutinized by both her own attorney and the judge having control over the alimony proceeding, the chance of her being imposed upon by not receiving the complete avails of the insurance policy for the use of her estate after her death is not a sufficient reason to argue that she has not received sufficient benefit from the insurance trust.

The majority opinion anticipates that in spite of the necessity for court approval of the alimony payments there is a possibility that in some future case some derelict husband might either impose upon his

defenseless wife or enter into collusion with his wife for the purpose of building up an insurance estate for himself and taxing the same to the wife. A sufficient answer to this unhappy contemplation is that if a case should come before this Court showing fraud or tax evasion, we would then have a case which could be distinguished on the facts from the *Hart* case. Nothing of that kind, however, exists in the case at bar.

The fact, furthermore, that the wife might destroy the insurance trust by her own remarriage is a future event entirely within her own control and no injustice is imposed upon her by such a contingency. The facts in this case on the exclusiveness of the divorced spouse's beneficial rights under the insurance trust are more favorable to the petitioner than they were to the taxpayer in the *Hart* case, because in that case it was expressly provided that others besides the divorced wife might possibly benefit from the avails of the insurance policy during the life of the wife.

The fact that in the *Hart* case the divorced spouse had the privilege of diverting a portion of the amount agreed to be paid by her former husband for insurance into her own purse by directing that the amount of insurance be reduced and the premiums thus saved paid to her is not a basis of distinction between the *Hart* case and the one at bar. In the *Hart* case the payments to the wife were to be 38½ per cent of her former husband's annual income and the 38½ per cent was to include the payments for the insurance premiums. Thus, her support payments were of an indefinite nature and it was only fair that she should have the right, in the event her support payments became greatly reduced, to increase those payments by diverting some of the cash used for insurance.

In the case at bar the payments are a fixed and definite amount, $100 per week, and the amount of insurance is also a fixed and definite amount, $65,000. The computation of the premiums on this insurance was definitely ascertainable. If those premiums had been made payable by the husband to the wife under an agreement that they should be paid by her for the insurance premiums in order to procure her own life annuity, even though the reversionary interest might have been reserved to her husband's estate, no question could be raised as to their deductibility from the husband's income, and under Regulations 111, section 29.22 (k)–1 (b), it is a matter of no consequence whether the receipts by the wife from the husband are transmitted directly or indirectly. The regulation reads as follows:

(b) ALIMONY INCOME ATTRIBUTABLE TO PROPERTY.—The full amount of periodic payments received under the circumstances described in section 22 (k) is required to be included in the gross income of the recipient whether such amounts are derived, in whole or in part, from the income received and accrued by the

source to which such payments are attributable. Thus, it matters not that such payments are attributable to property in trust, to life insurance, endowment, or annuity contracts or to other interest in property, or are paid *directly* or *indirectly* by the obligor husband from his income or capital. [Italics supplied.]

Whatever factual distinction exists between the case at bar and the *Boies Hart* case, *supra*, would seem to indicate that the petitioner herein has a stronger case on the facts than did the taxpayer in the *Boies Hart* case. The latter case was promulgated by this Court without dissent and has been acquiesced in by the Commissioner. C. B. 1949-6-13037. We can see no basis for disavowing the principles of the *Hart* case at this time.