Edna Horn Seligmann (formerly Edna H. Mandel) Petitioner v. Commissioner.
Seligmann v. Commissioner
Docket No. 36043.
United States Tax Court
1952 Tax Ct. Memo LEXIS 26; 11 T.C.M. (CCH) 1170; T.C.M. (RIA) 52344; November 28, 1952
*26 Pursuant to a separation agreement incident to a divorce decree, the former husband of petitioner paid during each of the years 1942 and 1943, $8,000 in alimony which petitioner concedes is taxable to her under Section 22(k) of the Code. In addition, respondent determined as taxable to petitioner certain payments made pursuant to the agreement by the ex-husband on his life insurance policies which were held by a trustee appointed for the benefit of petitioner and her children. The insurance policies were not pledged as security for payment of alimony. Held, the parties to the separation agreement intended that the life insurance premiums be in addition to the other alimony of $8,000. The amount of the premiums is taxable income to petitioner under Section 22(k) of the Code. Joseph A. Golde, Esq., 77 W. Washington St., Chicago, Ill., for the petitioner. Francis J. Butler, Esq., for the respondent. BLACK *27 Memorandum Findings of Fact and Opinion Petitioner contests respondent's determination of a deficiency of $989.72 in her income tax for the year 1943. By reason of the Current Tax Payment Act of 1943 the year 1942 is also in issue. In the notice of deficiency respondent in adding $1,817 to the net income reported by petitioner on her 1942 amended tax return explained this addition as follows: "(a) Your taxable income for the year 1942 has been increased by the amount of $1,817.00. It is held that the above amount, which consists of premium payments made by Leon Mandel, your former husband, on life insurance policies, in which you have a beneficial interest, constitutes taxable income to you. See section 22(k) of the Internal Revenue Code." The same explanation was used by respondent in describing the adjustment to net income for the year 1943, however, the amount of the adjustment in 1943 was $1,864. Only one issue is presented here: Do the two life insurance premium payments in 1942 and 1943 constitute *28 taxable income to petitioner as alimony paid to her under the provisions of section 22(k) of the Internal Revenue Code? Findings of Fact The facts were submitted by written stipulation and, in addition, at the hearing respondent admitted as being true that petitioner married George Seligmann on January 27, 1946. The stipulated facts are hereby found accordingly and are incorporated herein by this reference. Petitioner Edna Horn Seligmann resides in New York City. Her income tax return for the year 1943 was filed with the Collector for the First District of Illinois. Petitioner was born on May 24, 1902 and Leon Mandel, II, was born on February 16, 1902. On April 30, 1924, Leon Mandel, II, and petitioner were married. Two children were born of this marriage, Noel, February 8, 1927 and Leon, July 31, 1928. Petitioner and her husband Leon Mandel, II, separated in August 1932. On November 29, 1932, Leon Mandel, II, and petitioner entered into a written agreement incident to the divorce proceedings which culminated on December 29, 1932 in a divorce decree. Pursuant to the provisions of the separation agreement Leon Mandel delivered two life insurance policies *29 on his life in the face amount of $50,000 each to the designated trustee. The insurance policies issued by the Sun Life Assurance Company of Canada, Nos. 1282409 and 1282410, provided: "XII. - BENEFICIARY. - Provided this policy or any interest herein be not then assigned, the assured may, without the consent of any beneficiary, (a) change the beneficiary or beneficiaries from time to time during the continuance of this policy by filing with the Company a written request in such form as the Company may require, accompanied by this policy, such change to take effect only upon the endorsement of the same on the policy by the Company; (b) surrender, assign or pledge this policy and receive, exercise and enjoy every benefit, right and privilege conferred upon the assured by the terms of this policy." The insured on or about October 24, 1933, changed the beneficiaries of each policy as follows: "In accordance with the terms and conditions of Policy No. 1282409, issued by you, I, the assured thereunder, do hereby request that the beneficiary, who is to receive the proceeds thereof upon due but only in the event of my death before the end of the endowment period, if any to The Northern *30 Trust Company, of Chicago, Ill., as trustee under Trust Agreement dated November 29, 1932, between Leon Mandel, II, Edna Horn Mandel and The Northern Trust Company, without obligation on the part of the Sun Life Assurance Company of Canada to see to the application of the proceeds of the policy and I hereby request you to endorse this change on the said policy, and perform all acts and things necessary to effect the change of beneficiary as above requested." During the years 1942 and 1943 Leon Mandel, pursuant to the provisions of the separation agreement, paid premiums on the insurance policies amounting to $1,817 in 1942 and $1,864 in 1943. The written agreement incident to petitioner's divorce was 24 pages long, not including attestations, and in its 15 separate parts the rights and obligations of petitioner and Mandel were set forth in detail. We are here concerned in particular with part 4 of the agreement which reads as follows: "4) The husband hereby delivers to and deposits with the trustee for the purposes hereof, the following ordinary or straight life insurance policies, to-wit: "Policies bearing Numbers 1,282,409 and 1,282,410, issued by the Sun Life Assurance Company *31 of Canada, each insuring the life of the husband in the sum of Fifty Thousand Dollars ($50,000.00). which policies the husband represents are in good standing and in force and effect on this date, and that no loan is outstanding against said policies, or either of them. "The husband does also herewith deliver to the trustee a direction appointing said trustee as beneficiary under said policies, and authorizing said Sun Life Assurance Company to consent to and approve said change of beneficiaries under said policies. The husband hereby authorizes and directs the trustee to amend said policies of insurance so deposited, or cause the same to be amended so as to provide as follows: "a) In the event of the husband's death, the proceeds of the policies shall be retained by the insurance company upon the following conditions: The entire income of said principal sum shall be paid to the wife during her lifetime so long as she is not remarried. While the wife is remarried, the income shall be paid in equal parts to the wife and the surviving children or child or the issue of the children, per stirpes, and upon the wife's death, said principal and all accumulations shall be paid to the *32 children or their survivor in equal parts or to their surviving issue, per stirpes. If, while the wife is remarried, no children shall survive the wife, or in the event that while she is remarried, both children shall be deceased, then one-third (1/3) of the income shall be payable to the wife for her life, and the balance of the income shall be paid as the husband may by his last will and testament direct, or, in the absence of such direction, to the heirs at law of the husband as they would be determined under the statutes of the State of Illinois concerning the devolution of personal property as the same is now enacted, and after the wife's death, the principal and all accumulations shall be paid as the husband shall direct by his last will and testament, and, in the absence of such direction, to the heirs at law of the husband as above defined. "b) Notice of premiums shall be sent to the wife and the trustee. "c) The beneficiaries under said policies shall be irrevocable, except only in the event that the wife has died and that both children have died without leaving issue surviving; and the husband shall have no right to change the beneficiaries during the life of the wife *33 or the life of either of the children or their issue, or to obtain any loan or surrender value of the policies or to hypothecate or assign the same during the life of the wife or the life of either of the children or their issue. "d) In the event of the death of the husband after the death of the wife, then the proceeds of said policies, when collected, (or the cash surrender value of them if the policies shall for any reason lapse by non-payment of premiums) shall be divided equally between the two children of the parties hereto or the survivor of them or their respective issue, per stirpes, or if both said children shall be then deceased, without having left any issue, then the proceeds shall be paid as directed in the last will and testament of the husband, and, in the absence of such direction, to the heirs at law of the husband in the proportion in which they would take under the statutes of the State of Illinois concerning the devolution of personal property as is now enacted. "e) In the event that prior to the death of the husband the wife shall die and both children shall die without leaving issue surviving either of them, then upon demand, all policies held by the trustee *34 shall be delivered to the husband, as and for his absolute property, free and clear of the trusts, conditions or limitations hereof. "f) At the option of the Trustee, it shall have the right to have said Sun Life Assurance Company pay over the principal of said policies, to the trustee, who shall thereupon use said funds to purchase a paid-up policy of life insurance or annuity with some other life insurance company as approved by the wife and/or children, and the income from said policy or annuity and the principal thereof, shall be held, disbursed and paid pursuant to and in accordance with all of the trusts, terms and conditions of this paragraph 4 set forth. In the event that the Sun Life Assurance Company of Canada shall be unwilling to retain the proceeds of said policies upon the trusts, conditions and terms hereinbefore set forth, then the policies shall be so amended so that the proceeds of said policies shall be paid over and delivered to the trustee, who shall use said funds to purchase a paid-up policy of insurance or annuity with some other responsible insurance company as approved by the wife and/or children, and the income from such policy of insurance and the annuity *35 thereof and the principal thereof shall be held, disbursed and paid pursuant to and upon all of the trusts, terms and conditions of this paragraph 4 set forth. If such paid-up policy or annuity cannot be obtained, then the proceeds received from said policies shall be retained by the trustee subject to and upon all of the trusts, terms and conditions in this entire paragraph 4 set forth, and shall have the right to invest and reinvest the same in United States Liberty Bonds or obligations and/or first mortgage bonds listed on the New York Stock Exchange. "The husband agrees on demand of the wife or trustee to execute any and all instruments or documents which may hereafter or from time to time be or become necessary in the opinion of said parties or their counsel or said insurance company or its counsel, to amend said policies of insurance to provide for all the matters and things herein in this paragraph 4 set forth, and the trustee is hereby authorized to execute on behalf of and as the duly authorized agent of the husband, any and all such instruments or documents. "The husband agrees to maintain said policies of insurance so long as either the wife or the children or their *36 survivor or any of the issue of the children shall be alive, and to pay the premiums hereafter from time to time becoming due on said insurance policies, in apt time, without allowing for periods of grace, and to send the receipted bills therefor to the trustee promptly thereafter, or else the husband agrees in apt time to furnish to the wife or trustee, the amount due for premiums on said policy or policies of insurance at or before the respective due dates thereof, without allowing for days of grace. The wife and/or the trustee may pay and recover from the husband all premiums becoming due on said policies and not paid by the husband, together with reasonable attorneys' fees and expenses incurred in connection with any such suit or suits." In addition to the life insurance policy premiums it was provided in the agreement that Leon Mandel was to pay to petitioner for and during her life for the support and maintenance of herself and the two children the sum of $18,000 per year beginning in 1932, subject, however, to certain limitations and restrictions. Of these payments, which were made as provided by contract, petitioner reported in her taxable net income the amount of $8,000 *37 as alimony, see section 22(k), I.R.C.
The two insurance policies were delivered by Mandel to the trustee, not for the purpose of securing the alimony payments provided by the separation agreement but rather the life insurance policy premiums as paid by Mandel during 1942 and 1943, constituted additional alimony to petitioner, that is, alimony income over and above the $8,000 reported annually by petitioner from the $18,000 in cash received each year by her under the separation agreement. Opinion BLACK, Judge: Pursuant to a separation agreement incident to a decree of divorce, during 1942 and 1943 petitioner received from Leon Mandel, petitioner's ex-husband, certain alimony payments under provision 1 of the separation agreement. Petitioner concedes these payments to the extent of $8,000 constitute alimony and has included $8,000 in her gross income each year under section 22(k) of the Internal Revenue Code. [1] During these two years and as provided by the separation agreement Mandel also paid premiums on two life insurance policies. These policies on Mandel's life, including the property rights of the policies, were possessed by a trustee *38 appointed under the separation agreement. The issue here is whether these payments of life insurance premiums [2] constitute alimony income taxable to petitioner under section 22(k) of the Code. *39 Respondent has added to the net income reported by petitioner on her tax return the entire amount of premiums paid by Mandel, and it is petitioner's contention in this proceeding that none of the payments constitute alimony taxable to her. The separation agreement between Mandel and petitioner was entered into during 1932, ten years prior to the enactment of section 22(k) of the Code. At the time of drafting of the separation agreement the parties to the agreement and their attorneys could not have had in mind the applicable provisions of the Code, that is, sections 22(k) and 23(u). The separation agreement between Mandel and petitioner provided in its first eight provisions briefly as follows: (1) $18,000 per year to petitioner for herself and the two children and in addition sums for clothing, education and medical costs of the children, (2) children are to remain in custody of petitioner, (3) petitioner agrees to provide a home for the children, (4) Mandel delivers two life insurance policies to a trustee for petitioner and the children; Mandel agreeing to continue payment of policy premiums, (5) Mandel deposited $100,000 in bonds with trustee for faithful performance of the *40 agreement, and for the $100,000 in bonds Mandel could substitute $200,000 in insurance, such $200,000 was to be exclusive of and in addition to the policies aggregating $100,000, (6) payments are to cease upon death of Mandel, (7) $100,000 to be left by Mandel at his death for the benefit of wife and children, and (8) petitioner's current bills and attorney's fees to be paid by Mandel, and also the division of personal property was provided for in provision 8. The life insurance premiums in issue here are those paid under provision (4) of the separation agreement. A different provision of the agreement, number (5), is concerned with security for the faithful performance of the agreement, allowing Mandel to give bond of $100,000 or life insurance equivalent. Premiums paid on the life insurance policies contemplated under provision (5) would be of the type which would not be alimony taxable to the wife and deductible by the husband. The insurance policies as contemplated under provision (5) are entirely different from the two policies provided for under provision (4) of the separation agreement. When provision (4) of the separation agreement, which is the controlling provision here, *41 is considered along with the balance of the agreement as an entirety, and with particular consideration of provision (5), we think that the parties to the agreement intended the payments of life insurance premiums to constitute alimony payments in addition to the payments set forth in provision (1) of the separation agreement. After a careful consideration of the separation agreement, and the other facts of record, we found as a fact: "The two insurance policies were delivered by Mandel to the trustee, not for the purpose of securing the alimony payments provided by the separation agreement but rather the life insurance policy premiums as paid by Mandel during 1942 and 1943, constituted additional alimony to petitioner, that is, alimony income over and above the $8,000 reported annually by petitioner from the $18,000 in cash received each year by her under the separation agreement." Petitioner relies on cases which hold that where under a separation agreement life insurance policies are placed in escrow merely as security for the payment of alimony, the premiums paid on the policies are not to be included as a part of the alimony deductible by the husband and taxable to the wife. *42 F. Ellsworth Baker, 17 T.C. 1610; William J. Gardner, 14 T.C. 1445, affirmed 191 Fed. (2d) 857; Lemuel Alexander Carmichael, 14 T.C. 1356; and Meyer Blumenthal, 13 T.C. 28, affirmed (C.A. 3, 1950) 183 Fed. (2d) 15. Respondent relies upon Estate of Boies C. Hart, 11 T.C. 16; Anita Q. Stewart, 9 T.C. 195; and also our Memorandum decision Leon Mandel, Docket No. 16280, decision entered May 6, 1949 [8 T.C.M. 445] affirmed on another point, 185 Fed. (2d) 50. These cases have held that in computing the amount of alimony income or alimony deduction there is to be included under certain circumstances discussed in those cases, the amounts paid under the separation agreements as premiums on life insurance policies. The taxpayer in the Leon Mandel proceeding is the former husband of the instant petitioner, Edna Horn Seligmann, and we decided there that the same insurance premiums as are in issue here were deductible by Mandel as alimony under section 23(u) of the Code. Our decision in Leon Mandel, supra, was appealed to the Seventh Circuit on another point and *43 was affirmed. The Commissioner did not appeal as to the deductibility by the taxpayer in that case of the insurance premiums as alimony. The cases cited by the parties are not inconsistent with each other. The question of whether the insurance premiums do or do not constitute alimony is one essentially to be decided upon the facts, including a consideration and interpretation of the separation agreement. Meyer Blumenthal, supra, and Halsey W. Taylor, 16 T.C. 376. Also see Lemuel Alexander Carmichael, supra, wherein we held that the taxpayer might deduct as alimony premiums paid by him on certain insurance policies on his life totaling $5,000, but the taxpayer was not allowed to deduct as alimony other insurance premiums paid pursuant to the separation agreement on policies totaling $15,000. In its opinion the Court discussed in detail the separation agreement and the decree, noting at pages 1363 and 1364 that the $5,000 insurance policy was owned by the wife, that premiums were to be paid by the taxpayer during the balance of his life and that the wife was an irrevocable beneficiary. On the other hand, the insurance policies totaling $15,000 *44 were placed in escrow simply as security for alimony payments, with ownership of the policies being retained by the former husband. Based upon a consideration of the separation agreement and the other facts and based upon the authority of the cases heretofore cited, we hold that life insurance premiums here involved paid by petitioner's husband during 1942 and 1943 constitute a part of the alimony taxable to petitioner under section 22(k) of the Code. Decision will be entered for the respondent. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(k) Alimony, Etc., Income. - In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, period payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In case any such periodic payment is less than the amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument, but only to the extent that such installment payment for the taxable year of the wife (or if more than one such installment payment for such taxable year is received during such taxable year, the aggregate of such installment payments) does not exceed 10 per centum of such principal sum. For the purposes of the preceding sentence, the portion of a payment of the principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be considered an installment payment for the taxable year in which it is received. (In cases where such periodic payments are attributable to property of an estate or property held in trust, see section 171 (b)). ↩
2. The premium payments in question are those made by Mandel pursuant to provision (4) of the separation agreement, which provision is set forth in its entirety in our findings of fact.↩