Gerard Piel and Eleanor Jackson Piel v. Commissioner.
Piel v. Commissioner
Docket No. 89480.
United States Tax Court
T.C. Memo 1963-346; 1963 Tax Ct. Memo LEXIS 2; 22 T.C.M. (CCH) 1818; T.C.M. (RIA) 63346; December 31, 1963
Eleanor Jackson Piel, for the petitioners. John B. Murray, for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in 1957 income tax in the amount of $577.17. The issue is whether petitioners may deduct as periodic alimony payments premiums paid by petitioner husband on life insurance policies of which his former wife was primary beneficiary, and which, under a writen separation agreement incorporated in the divorce decree, were credited against alimony he was obligated to pay. Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioners Gerard and Eleanor Jackson Piel are husband and wife, residing at 320 Central Park West, New York 17, New York. Petitioners filed a timely joint Federal income tax return for the calendar *3 year 1957 with the district director of internal revenue, Upper Manhattan district, New York. Gerard Piel will hereinafter be referred to singly as petitioner. Petitioner and his former wife, Mary Bird Piel, hereinafter referred to as Mary, were divorced in the State of Nevada on June 6, 1955. A written separation agreement executed previously by the parties was incorporated in full by reference in the divorce decree and made a part thereof. Under the separation agreement, petitioner was to make periodic alimony payments to Mary so long as she lived and remained unmarried, based on a sliding scale depending on petitioner's income. The minimum amount in any calendar year was $3,750 and the maximum amount was $6,250 plus 10 percent of petitioner's income in excess of $30,000. In the agreement petitioner agreed to maintain insurance policies on his life in an aggregate face value of $45,000 in which Mary was the primary beneficiary. The separation agreement further stated: * * * [There] shall be credited each year against the Husband's payments of income for the support of the Wife the amount of net premiums paid or to be paid by the Husband in such year to maintain $45,000 of *4 life insurance to the primary benefit of the Wife * * * provided, however, that the amount of net premiums so credited shall in no event exceed $1,200 per annum. * * * The separation agreement specified three policies in the face amounts of $25,000, $16,000, and $4,000 issued by The Northwestern Mutual Life Insurance Company, Milwaukee, Wisconsin, to be maintained for Mary's benefit although petitioner might substitute other policies provided he maintained an aggregate value of $45,000. A rider was incorporated in each of the policies providing that "the interests of the parties * * * shall be as provided in the Separation Agreement * * *." The two sons of petitioner and Mary were named contingent beneficiaries so long as Mary was primary beneficiary. In the event of Mary's remarriage or her death prior to petitioner's death, petitioner was required to name the sons as primary beneficiaries until both had finished their undergraduate college education or the younger attained the age of 25, whichever was sooner. Petitioner reserved the right in the agreement to borrow on the policies up to 50 percent of their cash value. Petitioner's estate was obligated to repay any such loans *5 if they had not been repaid at the time of his death. So long as Mary was primary beneficiary she alone had the right to select the settlement option to become applicable under the policies. If petitioner failed to make a required premium payment, Mary was entitled to make the payment and to hold petitioner accountable for the money advanced. To secure performance of his obligations under the agreement, including the maintenance of the insurance, petitioner executed a separate instrument, which was also incorporated into the decree of the Nevada Court, assigning, pledging, and placing in escrow his interest in the undistributed estate of his late father. After respondent determined the deficiency involved here, petitioner transferred complete ownership of the policies in question to Mary on April 29, 1960. In accordance with the stipulation of petitioner and Mary, the Nevada Court on July 25, 1961 ordered that the original separation agreement and divorce decree be amended to reflect the irrevocable transfer of the insurance policies and that the Court's order be entered nune pro tune as of June 6, 1955. Petitioners deducted the sum of $1,200 for premiums on the life insurance *6 policies as part of the $6,774.59 alimony payment claimed on their 1957 income tax return. Mary reported the $1,200 as income on her return. Upon being advised by respondent that she was entitled to a refund, Mary applied for and received a refund of the amount of tax imposed as a result of including the $1,200 in her income. Opinion Where premiums have been paid by the husband pursuant to a separation agreement on life insurance policies transferred to the wife we have held that the wife constructively received income since the policies were owned by her and their increased value redounded to her benefit. Anita Quinby Stewart, 9 T.C. 195 (1947); Lemuel Alexander Carmichael, 14 T.C. 1356 (1950); Katharine T. Hyde, 36 T.C. 507 (1961), aff'd 301 F. 2d 279 (C.A. 2, 1962). It follows that amounts so includible in the wife's income are deductible to the husband. Sec. 215, I.R.C. 1954. On the other hand, the cases * * * hold that when the wife under the divorce agreement is not the complete owner of the policy and her interest in the policy is simply that of a contingent beneficiary, the premiums paid by the *7 husband are not income to the wife or deductible by him. See James Parks Bradley, 30 T.C. 701 (1958), appeal dismissed pursuant to stipulation (C.A. 9, 1959); Beulah Weil, 22 T.C. 612 (1954), affirmed on this issue 240 F. 2d 584 (C.A. 2, 1957); Carl Ortmayer, 28 T.C. 64 (1957), modified without discussing this issue 265 F. 2d 848 (C.A. 7, 1959); Lillian Bond Smith, 21 T.C. 353 (1953), appeal dismissed (C.A. 9, 1954); Raoul Walsh, 21 T.C. 1063 (1954). [Florence H. Griffith, 35 T.C. 882, 888, 889 (1961).] That Mary did not own the policies during the year in issue and that her interest was contingent are admitted. The rights and incidents of ownership remained in petitioner. [1] Petitioner could change the beneficiaries or even cancel the specific policies. [2] That being so, Mary *8 did not realize any economic gain during the taxable years from the premium payments. For example, any increase in the cash surrender or the loan value of the policy resulting from the premium payments inured to the benefit of the owner of the policy and not to [Mary]. [Lillian Bond Smith, 21 T.C. 353, 363 (1953).] Mary could benefit from the premium only if she remained unmarried and survived petitioner. Meyer Blumenthal, 13 T.C. 28 (1949), affd. 183 F. 2d 15 (C.A. 3, 1950); Smith's Estate v. Commissioner, 208 F. 2d 349 (C.A. 3, 1953), affirming on this issue a Memorandum Opinion of this Court. Petitioner relies principally upon Estate of Boies C. Hart, 11 T.C. 16 (1948), which bears some similarity to the case at bar. Under the property settlement agreement there, the husband paid premiums on insurance policies on his life maintained for his former wife's benefit through a trust arrangement. The former wife was to receive on the husband's death two-thirds of the income if she was alive and not remarried, one-third if alive but remarried and none if she failed to survive. The remainder went to the husband's *9 descendants - a son of the marriage being the only descendant. The wife received alimony equal to 38.5% of the husband's income which sum "shall include all payments made by [husband] for or on account of [the insurance]." The wife had the right to decrease the amount of the insurance (upon agreement of the son and, if the amount dropped below a certain figure, the husband also) thereby increasing the amount of cash alimony to her, and did so. Under a New York court decree the husband could not revoke or amend the trust arrangement. This Court held that the premium payments were made as a result of agreement between the parties, that they constituted constructive income to the wife and were made for her benefit and on her behalf, and that they were includible in her gross income and deductible from the husband's taxable income. Subsequent decisions have limited Hart strictly to the facts present there. Meyer Blumenthal, supra; [3]Lillian Bond Smith, supra.
*10 Several significant factual distinctions between Hart and the instant case are apparent. Mary had no power to reduce the amount of premium paid and thus increase her cash alimony. Petitioner, unlike the husband in Hart, had full power to amend or revoke the described policies. [4] Here the payment, under the agreement of the parties, was not to be included in the alimony as in Hart, but rather the husband might "credit" a limited amount against the alimony he was to pay. The Commissioner argued unsuccessfully in that case, and it could be argued here, that the wife did not actually receive the premiums, she was not the sole beneficiary, and the premiums did not benefit her alone or even persons of her choice, there was no certainty that she would ever benefit from the policies, and, therefore, why should any part, let alone all, of the premiums be taxed to her? It could also be argued that the premiums built up an estate for the husband out of which his former wife might be supported after his death, in contrast to alimony *11 payments during their joint lives, and out of which others of his choice might also benefit. Therefore, the ex-wife should not report, and he should not deduct, the amounts. [Meyer Blumenthal, supra, at 31.] In Seligmann v. Commissioner, 207 F. 2d 489 (C.A. 7, 1953), the Court of Appeals, reversing a Memorandum Opinion of this Court, noting that it was aware of no previous cases in which a court of review had considered whether insurance premiums were alimony payments, rejected the test applied by the Tax Court there (whether premiums paid were for security purposes) and held that a decision "depends upon a more fundamental issue, that is, whether petitioner (wife) in the taxable years in question received cash, either actually or constructively, or property of ascertainable value." Seligmann v. Commissioner, supra at 492. The court concluded that the wife there had received no cash either actually or constructively since payment had been made directly to the insurance company and that she "received no property capable of measuremnt or ascertainment." Seligmann v. Commissioner, supra at 494. This view was later adopted as the *12 Tax Court rule. Leon Mandel, 23 T.C. 81, 90 (1954), affd. 229 F. 2d 382 (C.A. 7, 1956). Any vitality left to the Hart decision today, in light of the later cases, must be limited to situations where the payment is made with money clearly belonging to the wife and is paid out of the alimony at her behest. We are unable to find as a fact that the separation agreement here so provides. Rather, it was agreed that petitioner might "credit" a specified amount (not the entire premium amount), thereby reducing the alimony he was to pay and Mary was to receive. Unlike Hart, there was no assignment of the policies and they could be exchanged by petitioner. Mary's rights and interest in these policies in the taxable years is so remote that we should not be warranted in attributing payment of these premiums to her. Decision will be entered for respondent. Footnotes
1. Petitioners do not contend that the nunc pro tunc order of the Nevada Court could effectively change the character of the payments made before the date of the order for Federal income tax purposes. See Robert L. Daine, 9 T.C. 47 (1947), affd. 168 F. 2d 449 (C.A. 2, 1948); Peter Van Vlaanderen, 10 T.C. 706 (1948), affd. 175 F. 2d 389↩ (C.A. 3, 1949). 2. The parties' interests were determined by the separation agreement which provided that petitioner might substitute other policies provided he maintained $45,000 face value worth of insurance.↩
3. The dissent there noted, "Whatever factual distinction exists between the case at bar and the Boies Hart case, supra, would seem to indicate that the petitioner herein has a stronger case on the facts than did the taxpayer in the Boies Hart case." [Meyer Blumenthal, supra at 33↩.]
4. Petitioner, for example, could apparently have surrendered the existing policies for any present cash value and substituted others in a like face amount.↩