*Decision will be entered under Rule 50.*

LEMUEL ALEXANDER CARMICHAEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19659. Promulgated June 30, 1950.

*Robert S. Eastin, Esq.*, for the petitioner.
*Marvin E. Hagen, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: From July 21, 1945, when Vieva Carmichael was granted a divorce, until December 31, 1945, petitioner paid $1,300 to his former wife in the form of cash installments of alimony, $274.30 as premiums on life insurance policies held in escrow, and $500.90 as premiums on two life insurance policies which he had delivered to her, or a grand total of $2,075.20. The sole question for our determination is whether all or any portion of this $2,075.20 was includible in the gross income of Vieva Carmichael for 1945 under section 22 (k) of the code and thus was deductible by petitioner under section 23 (u) of the code.

Both parties agree that the $2,075.20 was paid pursuant to the discharge of a legal obligation imposed by both the divorce decree and the property settlement agreement incident thereto. They also agree that additional cash installments paid by petitioner in 1945 for the maintenance of his daughter were not deductible by him under section 23 (u).

Respondent contends that petitioner was not entitled to any deduction under section 23 (u) in 1945 because both the cash installments of alimony paid to his former wife and the insurance premiums he paid were installment payments of a specified principal sum payable over a period of less than 10 years and thus did not constitute periodic payments includible in the gross income of Vieva Carmichael for 1945 under section 22 (k).

Petitioner contends that the premiums paid on both the escrowed insurance policies and those delivered to Vieva Carmichael were constructively received by her and thus constituted income to her in 1945, as well as the cash installments of alimony which she actually received. He further asserts that under the property settlement agreement and divorce decree he was obligated to maintain in force for the rest of his life the two $5,000 policies which he delivered to his former wife so

that the premiums of $500.90 which he paid on these policies in 1945 constituted periodic payments includible in Vieva Carmichael's income and therefore deductible by him. Petitioner finally contends that the provision of the property settlement agreement and the divorce decree relating to alimony are unitary and thus provision for cash installments of alimony and for the payment of premiums on the insurance policies held in escrow and delivered to his wife constituted inseparable parts of a single obligation. Consequently, in view of the indefinite total amount and indefinite duration of the premium payments on the policies delivered to Vieva Carmichael, the alimony obligation was not one for the payment of specified principal sum, but was one for periodic payments of an indefinite total amount. Thus petitioner declares that he was entitled to deduct the entire sum of $2,075.20 in 1945 under section 23 (u).

We agree with respondent that the cash payments of $200 a month which petitioner was required to pay to his former wife as alimony under the property settlement agreement and the divorce decree constituted installment payments of a specified principal sum due and payable within a period of less than 10 years and therefore were not periodic payments includible in Vieva Carmichael's income under section 22 (k). The terms of the agreement and decree clearly call for petitioner to pay a gross allowance to his former wife of $27,000 in cash installments of $250 per month, $200 as alimony and $50 for the support of Donna Carmichael. The effect of this provision is that petitioner was required to pay $21,600 as alimony and $5,400 as support for his child over a period of months totaling 9 years. Thus it is clear that the $1,300 which petitioner paid to his former wife in 1945 as alimony constituted installment payments which he was not entitled to deduct under section 23 (u). See *J. B. Steinel*, 10 T. C. 409.

Turning to the insurance policies totaling $15,000 which were deposited in escrow, we found as a fact, and petitioner admits, they were simply security for the payment of the first $15,000 of the gross allowance of $27,000. On the basis of this finding, we now hold that the premiums of $274.30 paid by petitioner on these escrowed policies in 1945 were not constructively received by his former wife so as to constitute income to her in that year. She did not actually receive any of the sums expended for the payment of these premiums. There was no certainty she would ever benefit from them. It is clear she received no immediate benefits as primary beneficiary, for petitioner retained ownership of the policies. Only in case her former husband died before the payment of $15,000 gross allowance and she survived him would she be sure to receive the proceeds of any of these policies. We note that petitioner was 47 years old just after the divorce decree

was granted and that the first $15,000 of the gross allowance would be due and payable at the end of 5 years. Thus the possibility of benefit to Vieva Carmichael was quite remote. Furthermore, petitioner's wife was not the sole beneficiary of any of these eight policies. An additional consideration is the fact these policies were to secure cash payments for the support of the child as well as cash payments of alimony, so that the premiums, in any event, would not benefit Vieva Carmichael alone. Under similar but less compelling circumstances, we held in *Meyer Blumenthal*, 13 T. C. 28, that the wife of the taxpayer did not constructively receive premiums on policies maintained by her husband to secure cash installments of alimony. The cases of *Anita Quinby Stewart*, 9 T. C. 195, and *Estate of Boies C. Hart*, 11 T. C. 16, cited by petitioner, are distinguishable from the instant case. In the former, insurance policies were irrevocably assigned to taxpayer's wife as alimony. In the latter the taxpayer's wife agreed to take as alimony a certain percentage of her husband's annual income and further agreed that the premiums on insurance for her benefit were to be paid out of and subtracted from the agreed percentage of his income she was to receive. The wife and son could cause the insurance to be reduced and thus increase the percentage of her husband's income receivable in cash. When it is remembered that in the instant case all the escrowed policies were merely security for payment of part of the gross allowance, it is clear the cited cases are not in point.

Regarding the two $5,000 policies which were delivered to Vieva Carmichael, respondent contends that they also constituted mere security for payment of the gross allowance of $27,000. Petitioner claims they were provided as additional alimony by the property settlement agreement and the divorce decree. At first blush respondent's contention seems correct, for the property settlement agreement, the divorce decree, and the receipt for the two $5,000 policies expressly state that the policies were security for payment of the $27,000. Yet, despite this language, closer examination of the agreement and decree, as well as consideration of both the terms of the two policies and the testimony of petitioner at the hearing convince us that the two policies constituted something more than mere security.

The divorce decree sharply distinguished between the insurance policies totaling $15,000 in escrow and the two policies of $5,000 each. It provides as to the former that the beneficiaries shall not be changed so long as the policies are deposited in escrow as security. As to the latter, it provides that the beneficiaries shall not be changed at any time in the future. If all the policies were mere security, we can not understand why the decree made a separate provision for the two $5,000 policies. Nor does this supposition explain why it provided that the beneficiary of each $5,000 policy should not be changed at any future

time. This is certainly not language connoting security for payment of an obligation.

The property settlement agreement, which formed the basis for the decree, expressly states that $15,000 of insurance shall be delivered in escrow and $10,000 of insurance shall be delivered to Vieva Carmichael. Further, it states that petitioner shall have no right to change the beneficiaries of the two $5,000 policies delivered to Vieva Carmichael, while it forbids petitioner to change the beneficiaries of the escrowed policies only so long as they are deposited in escrow. Again, we are not able to understand the distinction drawn between the escrowed policies and those delivered to petitioner's former wife unless the latter were intended to be more than security.

The language of the two $5,000 policies, which petitioner applied for pursuant to the terms of the property settlement agreement, clearly designates Vieva Carmichael as the primary beneficiary and owner of one and Donna Carmichael as the primary beneficiary and the owner of the other. Moreover, the designation of beneficiaries in the two policies was irrevocable. Thus, the terms of the two policies can not be harmonized with the interpretation of the property settlement agreement and the decree which respondent urges, for they are couched in terms of ownership rather than temporary retention for purposes of security.

Furthermore, petitioner testified without contradiction at the hearing that at the time of the property settlement agreement it was understood that he was obliged to pay premiums on the two $5,000 policies for the rest of his life. We find the same difficulty of reconciling this statement with the view that the policies were mere security.

We have found as a fact, therefore, that the $5,000 policy the title to which was vested in Vieva Carmichael constituted additional alimony under the terms of the property settlement agreement and the decree. From the express language of the agreement and the plain implication of the decree, we have further found as a fact that petitioner was obligated to maintain this policy in force for the rest of his life. On the basis of these findings of fact, we now hold that the premiums of $250.45 petitioner paid on this policy in 1945 were constructively received by Vieva Carmichael so as to constitute a portion of her gross income for that year under section 22 (k). As present owner of this policy she derived many immediate benefits which she could exercise. Only if Vieva Carmichael failed to survive her husband would she fail to receive the full proceeds of the policy upon his death. The presence of such a contingency in the case of *Estate of Boies C. Hart, supra,* did not prevent us from determining that the premiums paid on the insurance for the wife's benefit were constructively received by her, nor does it deter us in the instant case. We further conclude that the

premium payments on this insurance policy were clearly periodic within the meaning of section 22 (k), for petitioner was under an obligation to pay them for an indefinite period, i. e., the remainder of his life. Thus we hold that petitioner was entitled under section 23 (u) to deduct the $250.45 he paid on this policy in 1945.

Passing to the other $5,000 policy, the title to which was vested in Donna Carmichael, we have found as a fact that this constituted additional maintenance for the child's benefit under the provisions of the property settlement agreement and decree. From the express language of the agreement and the clear implication of the decree, we have further found that petitioner was obliged to pay the premiums on this policy during his life. Such an interpretation of these two instruments gives effect to the language therein providing that she be made primary beneficiary of the policy and is a logical corollary to the clear division of the cash payments of $250 per month which petitioner was required to pay Vieva Carmichael, $200 of which was for alimony and $50 of which was for the maintenance of Donna Carmichael. Furthermore, such an interpretation accords with the terms of the policy which vest present title therein to the child. To hold, as petitioner asserts, that this policy constituted additional alimony for Vieva Carmichael fails to give effect to the language of the decree, the agreement incident thereto and the policy itself, which provided that she was only a secondary beneficiary of this insurance. The premiums of $250.45 paid in 1945 on this additional provision for maintenance of the child are expressly excluded from the income of Vieva Carmichael by section 22 (k) and therefore were not deductible by petitioner under section 23 (u) in 1945.

Finally petitioner seeks to persuade us that the separate provisions for alimony imposed upon him by the property settlement agreement and decree are of such a unitary nature that they must be considered as a single obligation in applying section 22 (k). His contention would so link together the two separate provisions in the decree and agreement providing for alimony, i. e., the cash payments of $200 per month to Vieva Carmichael and the premium payments of $250.45 per year on the $5,000 policy whose title vested in her, that they would constitute a single alimony obligation to pay $2,650.45 per year for 9 years and $250.45 thereafter until petitioner's death. On the basis of this reasoning, petitioner concludes that the indefiniteness of both the duration and final total of payments under such an alimony obligation qualifies them as periodic payments within the meaning of section 22 (k), and that he is thereby entitled to deduct $1,550.45, the aggregate of the cash payments of alimony to Vieva Carmichael and the premium payments of $250.45 he made from June 21, 1945, to the close of the year.

1366

Petitioner cites no authority for his unitary concept of the separate alimony obligations provided in this decree and agreement incident thereto, and we can find none. Section 22 (k) of the code clearly provides that installment payments discharging a part of an obligation the principal sum of which is specified in the decree or instrument shall not be considered periodic payments unless the principal sum is to be paid within a period extending over more than 10 years. The cash payments of $200 per month to Vieva Carmichael as alimony precisely fit this statutory definition of installment payments which shall not be considered periodic payments. To hold that such an obligation should be combined with an entirely separate and distinct alimony obligation which calls for periodic payments so that the aggregate payments under the combined obligations are periodic would clearly defeat the statutory intent. It would then be possible for a taxpayer to provide in an agreement incident to divorce for payment of a principal sum of $100,000 in cash installments of $50,000 per year for a period of 2 years and yet deduct $50,000 a year as a periodic payment under section 23 (u) so long as he was careful to insert another provision in the agreement that he would vest title to a $1,000 insurance policy on his life in his wife and pay the premiums thereon for the rest of his life. We are convinced Congress did not intend such a result when it enacted section 22 (k).

We thus hold that only $250.45 of the $2,075.20 that petitioner paid in 1945 qualifies as a deduction under section 23 (u).

Reviewed by the Court.

*Decision will be entered under Rule 50.*