KATHARINE T. HYDE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78999. Filed June 12, 1961.

*George A. Burrell, Esq.*, for the petitioner.
*Warren S. Shine, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* Respondent determined deficiencies in petitioner's income tax in the amounts of $814.87 in 1954 and $873.16 in 1955. The only issue is whether the annual premiums of $1,892.99 paid by petitioner's former husband in each of the taxable years on four life insurance policies previously assigned to her are includible in her gross income as periodic payments under a decree of divorce or written instrument incident thereto as provided in section 71(a)(1) of the Internal Revenue Code of 1954. The facts have been stipulated.

Petitioner resides at 1192 Park Avenue, New York, New York. She filed her individual income tax returns for the years 1954 and 1955 with the district director of internal revenue, Upper Manhattan District, New York, New York.

Petitioner and Gordon E. Hyde were married on January 31, 1925. There were three children of this marriage: Donald R., born in 1926; Barbara L., born in 1929; and Harriet, born in 1934.

On December 1, 1947, petitioner and Gordon E. Hyde entered into a written separation agreement providing for, among other things, the support and maintenance of the petitioner and the two younger children. In addition to provisions for annual cash alimony, the agreement provided in paragraph Second (b) as follows:

SECOND: The Husband shall provide as and for the exclusive and personal support and maintenance of the Wife during her lifetime, or until the Wife shall remarry, as follows:

\*         \*         \*         \*         \*         \*         \*

(b) Pay to the Wife, or, at her direction to the insurance companies direct, all insurance premiums on life insurance policies referred to in Paragraph THIRD (a) during his lifetime, as and when such premiums become due and payable, (exclusive of grace period) and when paid by Husband direct deliver to the Wife, at least 15 days after such due date, the insurance companies' receipts evidencing such payments, with the limitation however, that if the Wife shall subsequently be divorced and shall remarry, then the obligation for the Husband to pay premiums shall cease upon such remarriage.

Paragraph Third (a), referred to in paragraph Second (b), provided as follows:

THIRD: The Husband does hereby convey, transfer, assign and set over to the Wife, the following:

(a) Whole or straight existing life insurance policies, payable to Wife as beneficiary without limitation or reservation, presently in the face amount of $51,500.00, enumerated and listed in Schedule A, attached hereto and made a part hereof, which policies Husband represents are free of loans, claims, or other adverse interests.

Schedule A of the separation agreement listed the four life insurance policies referred to in paragraph Third (a) and described them by the name of the insurer, the policy number, the amount of the insurance, the date of the policy, and the annual or quarterly premium. The total life insurance represented by the four policies amounted to $51,500.

Pursuant to the separation agreement, Gordon formally assigned all his right, title, and interest in the insurance policies to petitioner during 1947 and 1948. These assignments were endorsed or noted by the respective insurance companies on the four policies. As assignee, petitioner's rights in these policies include, among others, the right to change the beneficiary, to obtain cash loans, to receive dividends, to assign the policies, and to surrender the policies for their cash value. Petitioner has at all times since 1948 been in possession of the four life insurance policies.

In paragraph Twelfth of the separation agreement, petitioner and her former husband agreed that in any divorce proceedings instituted by either party the provisions of the agreement would be offered in evidence and, if received, would be incorporated in any order or decree that might be rendered. On April 21, 1948, she instituted divorce proceedings in the Supreme Court of the State of New York, Bronx County, and on July 28, 1948, the court entered an interlocutory divorce decree which became final 3 months thereafter. The third paragraph of page four of the divorce decree provides as follows:

ORDERED, ADJUDGED AND DECREED that the defendant pay to the plaintiff, or, at her direction to the insurance companies direct, all insurance premiums on the life insurance policies attached to and designated Schedule "A" of agreement dated December 1, 1947 between the parties, which agreement hereinbefore referred to and marked plaintiff's Exhibit 1 in evidence, as and when such premiums become due and payable, (exclusive of grace period) and when paid by defendant direct deliver to the plaintiff, at least 15 days after such due date, the insurance companies' receipts evidencing such payments, with the limitation however, that if the plaintiff shall subsequently be divorced and shall remarry, then the obligation for the defendant to pay premiums shall cease upon such remarriage * * *

Pursuant to the separation agreement and the divorce decree, Gordon paid the annual premiums of $1,892.99 due on the four life insur-

ance policies to the respective insurance companies in each year from 1948 to the present. Petitioner has never requested that premium payments be made directly to her.

By reason of the payment of the annual premiums, the cash surrender value of the four life insurance policies increased in the amount of $1,071.06 in 1954 and $963.98 in 1955.

The annual premiums of $1,892.99 paid by petitioner's former husband in 1954 and 1955 have been determined by respondent to be additional alimony received by petitioner during each of those years, taxable to her under section 71(a)(1) of the 1954 Code.[1]

We think that the Commissioner's determination must be sustained. Pursuant to the separation agreement and decree petitioner, the beneficiary, became the absolute owner of the policies.[2] Were the premium payments "received" by her within the meaning of the statute? Not only were they paid on her behalf to the insurance companies, but she could have required that they be paid to her in the first instance. The husband had no interest whatever in the policies. The case is controlled by *Anita Quinby Stewart*, 9 T.C. 195, where the wife did not even have the right to have the premiums paid directly to her. The Court said (p. 198):

It is difficult to see on what theory it could be successfully contended that the payments of insurance premiums * * * did not constitute petitioner's income * * *. The policies in question were her property and all payments made were at her instigation, for her account, and designed to redound to her benefit. * * *

Cf. *Estate of Boies C. Hart*, 11 T.C. 16; *Lemuel Alexander Carmichael*, 14 T.C. 1356, 1362–1365.

This case is to be distinguished from *Florence H. Griffith*, 35 T.C. 882, where the tax consequences were determined on the basis of the agreement between the spouses rather than by actual transfers (pp. 888, 889) and where, under the agreement, the husband was thought to have retained "a substantial interest in the policy." In view of what it regarded as the rights retained by the husband, the Court concluded that (p. 890):

it cannot be held that * * * [the wife] received the full benefits of ownership of the policy, and hence, the full benefits of the premiums paid.

Also clearly distinguishable is the entire line of cases upon which petitioner relies where the wife was not the complete owner of the

---

[1] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[2] To be sure, the husband's duty to pay premiums might cease upon the wife's remarriage, but that circumstance would not deprive her of any rights under the policies of which she would continue to remain the absolute owner.

**510**

insurance policies in issue. *Seligmann* v. *Commissioner*, 207 F. 2d 489 (C.A. 7), reversing a Memorandum Opinion of this Court; *James Parks Bradley*, 30 T.C. 701; *Carl G. Ortmayer*, 28 T.C. 64, modified without discussing this issue 265 F. 2d 848 (C.A. 7); *Beulah Weil*, 22 T.C. 612, affirmed on this issue sub nom. *Charles S. Weil* v. *Commissioner*, 240 F. 2d 584 (C.A. 2), certiorari denied 338 U.S. 821.

Petitioner seeks in the alternative to limit the amount of taxable gain to the annual increase in the cash surrender value of the policies. The Court did not apply any such limitation in the *Anita Quinby Stewart* case, 9 T.C. 195, and we see no reason to do so here. Petitioner's right to cash surrender was merely one of a number of rights in the policies, and as the sole owner of the policies she benefited to the full extent of the premiums. The value of all the various rights represented by the policies is most accurately measured by the cost of procuring them, that is, by the premiums. Cf. *Guggenheim* v. *Rasquin*, 312 U.S. 254; *Powers* v. *Commissioner*, 312 U.S. 259.

We conclude that respondent correctly determined that petitioner realized income in the full amount of the annual premiums paid by her former husband in 1954 and 1955.

*Decision will be entered for the respondent.*