JOSEPHINE D. COTHRAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3012–70.    Filed November 30, 1971.

*Ottway Burton*, for the petitioner.
*Harvey S. Jackson*, for the respondent.

IRWIN, *Judge:* In a notice of deficiency dated March 17, 1970, respondent determined a deficiency of $538.36 in petitioner's income

tax for 1966 and a deficiency of $526.54 in petitioner's income tax for 1967. The primary issue before us is whether the payments that petitioner received from her former husband constituted alimony which is to be included in her income by virtue of section 71(a)(1)[1] of the Internal Revenue Code of 1954.[2] Our resolution of this issue will require some adjustment to petitioner's allowable deductions.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found.

Petitioner is Josephine D. Cothran who at all relevant times resided in Asheboro, N.C. Petitioner is a cash basis taxpayer whose returns for 1966 and 1967 were filed with the district director of internal revenue, Greensboro, N.C.

In 1948, petitioner was married to Charles H. Cothran, Jr. (hereafter Charles); however, in 1962 Charles abandoned her. Since that time petitioner has lived apart from Charles in the residence acquired while petitioner and her husband were living together. The title to this residence was first in the form of a tenancy by the entirety; however, on July 19, 1965, the tenancy by the entirety ended by operation of law and petitioner became a tenant in common with Charles.

On September 13, 1962, petitioner instituted a civil proceeding against Charles in the Superior Court of Randolph County, N.C., seeking a judgment for reasonable subsistence (alimony *pendente lite*) for herself and for support of the two children of the marriage. The court treated petitioner's proceeding against Charles as "an action for alimony without divorce" and in an order entered on September 21, 1962, determined that the petitioner was entitled to alimony *pendente lite* and attorney fees and temporary custody of and support for the two children. The order decreed that Charles pay into the office of the clerk of Superior Court of Randolph County the sum of $160 every month, starting September 29, 1962, "for the use and benefit of the plaintiff [petitioner] and the children of the marriage"; pay the sum of $175 for the use and benefit of petitioner's attorney; and give petitioner the exclusive use and possession of the home place for herself and the children. Also, in connection with the home place, Charles was required to pay the monthly mortgage payments, the Randolph County property taxes, and the premium for insurance on the property.

On February 10, 1965, pursuant to a motion filed by the petitioner, the Superior Court of Randolph County entered a second order in

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Respondent conceded in his reply brief that one-half of the amounts used to make mortgage and interest payments was not alimony. See p. 301, *infra*.

the petitioner's civil action against Charles for alimony without divorce. This order provided, in pertinent part, that Charles—

shall hereafter pay into the office of the Clerk of Superior Court of Randolph County the sum of THREE HUNDRED TEN AND NO/100 ($310.00) DOLLARS per month commencing with the month of March, 1965, and thereafter pending final determination of the issues involved in this matter. The said sum of $310.00 per month is to be disbursed to the plaintiff by the Clerk of Superior Court for the use and benefit of plaintiff and the children of the marriage of plaintiff and defendant; and no further payments on account of this action shall be required of the defendant. From said $310.00 per month, plaintiff shall pay ad valorem taxes, hazard insurance and the monthly payments on the indebtedness to Security Life and Trust Company heretofore paid by defendant.

AND IT IS FURTHER ORDERED that all provisions of the said order entered the 21st day of September, 1962 in this cause which are not specifically changed by the provisions of this order be and remain in full force and effect.

And this cause is retained for further orders.

On May 12, 1965, Charles was granted an absolute divorce from petitioner in a separate suit which he brought. The decree of divorce became final on July 19, 1965, when petitioner failed to perfect an appeal to the North Carolina Supreme Court.

During the years at issue petitioner made the following payments pursuant to the decree of February 10, 1965, with respect to the residence which she owned as tenant in common with Charles:

|  | 1966 | 1967 |
|---|---|---|
| Mortgage principal | $556. 95 | $588. 38 |
| Mortgage interest | 516. 21 | 484. 78 |
| County ad valorem property tax | 112. 75 | 119. 81 |
| City tax |  | 111. 32 |
| Insurance | 46. 10 | 45. 90 |

During 1966 and 1967, Charles paid $310 per month ($3,720 per year) to the Clerk of the Superior Court of Randolph County who in turn disbursed these funds to petitioner. Petitioner used the monthly payment for support of herself and the two children and to make payments on the mortgage, insurance, and taxes with respect to the residence.

On May 7, 1970, pursuant to motions filed by both petitioner and her former husband in petitioner's original suit for alimony without divorce, the Superior Court of Randolph County entered an order which stated the following in part:

THIS CAUSE coming on to be heard before the undersigned Judge Presiding at the May 4, 1970, Civil Session of Superior Court of Randolph County, upon motion by plaintiff that the order entered on February 10, 1965, by His Honor, Allen H. Gwyn, Judge Presiding, be modified to defray the expenses of a college education for one minor child of the plaintiff and defendant and the matter further coming on to be heard on motion of the defendant on his plea in abatement motion to dismiss; and it appearing to the Court after consideration of the record in

this action and·in an action entitled "Charles Harrison Cothran, Jr., Plaintiff, vs. Josephine Ann Dewey Cothran, Defendant," S.D. 2176, C.I. 5038, A32784; the sworn testimony of the plaintiff and other witnesses and the introduction of affidavits in this matter and statements of counsel for plaintiff and defendant, the Court finds the following facts:

\*      \*      \*      \*      \*      \*      \*

That the order entered in this matter on February 10, 1965, inadvertently failed to allocate the amount that was specifically awarded to the plaintiff for alimony pendente lite and to the two minor children of the marriage of the plaintiff and defendant for their support, but it was the intention of the parties at that time that the said sum of Three Hundred Ten and 00/100 ($310.00) Dollars per month which the defendant was ordered to pay should have been divided one-third (⅓) to the plaintiff for her support and two-thirds (⅔) to the two minor children of the marriage of the plaintiff and defendant, to-wit: Diane Michelle Cothran and Autumn Lynn Cothran.

#### OPINION

Petitioner married 'Charles in 1948, and was separated from him in 1962. In that year petitioner instituted an action for alimony without divorce which was granted. In 1965 an order was entered in petitioner's suit in which she was awarded modified payments of $310 per month from Charles for support of herself and the two children of the marriage. Petitioner was required by this order to make payments of mortgage, taxes, and insurance for the residence that she owned in tenancy by the entirety with Charles. In a separate action in 1965 Charles obtained an absolute divorce from petitioner. By operation of law petitioner's tenancy by the entirety in the residence changed to a tenancy in common with Charles.

In 1966 and 1967 petitioner received $3,720 from Charles which respondent has determined to be taxable as alimony under section 71(a) (1). Petitioner contends that only one-third of the amount received from Charles was taxable as alimony by virtue of section 71(b) and disputes respondent's treatment of certain deductions.[3]

---

[3] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

    (a) GENERAL RULE.—

        (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

    \*      \*      \*      \*      \*      \*      \*

    (b) PAYMENTS TO SUPPORT MINOR CHILDREN.—Subsection (a) shall not apply to that part of any payment which the terms of the decree,. instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.

Petitioner has attempted to lead us through the vagaries of the law of the State of North Carolina with respect to divorce and procedure and the distinction between alimony and alimony *pendente lite*. At one point petitioner argued that the payments received by petitioner were not alimony under local law without explaining what they might have otherwise been. We are convinced that the order of the Superior Court entered on September 21, 1962, and as modified in 1965, was a decree of separate maintenance under which Charles made payments to petitioner until 1970 because of the legal obligations incident to his marriage to petitioner. As such, these payments are alimony under section 71(a)'(1) unless they fit the definition of child support contained in section 71(b). The Federal definitions of alimony and support contained in section 71 take precedence over any State law definitions. *Burnet* v. *Harmel*, 287 U.S. 103 (1932); *Lyeth* v. *Hoey*, 305 U.S. 188 (1938).

Petitioner contends that two-thirds of the $3,720 that petitioner received from Charles in each year was not alimony but child support. Her argument is based not upon the terms of the order under which the payments were made but upon the alleged intent of the parties, changes in North Carolina law enacted subsequent to the order, and upon an order entered in the alimony action in 1970. The circumstances noted by petitioner indicate that it is likely that the parties to the divorce did intend that only one-third of the payments should be alimony and that the Superior Court should perhaps have allocated the payments specifically between alimony and child support. However, our ability to give effect to these considerations is severely limited by language of section 71(b) itself and the Supreme Court's decision in *Commissioner* v. *Lester*, 366 U.S. 299 (1961).

Section 71(b) permits a wife to exclude from her income that part of payments from her husband which the terms of the decree "fix" as a sum payment for child support. After review of the legislative history with respect to the predecessor of section 71(b), the Court in *Commissioner* v. *Lester*, *supra*, construed the provision quite literally and narrowly:

This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress. [366 U.S. at 303.]

Petitioner claims that respondent has relied too heavily upon *Lester*; however, we would be puzzled if respondent did not rely upon a Su-

preme Court precedent that was directly on point. We believe that *Lester* does not permit us to look very far beyond the decree of the court, which in this case does not fix any part of the $310 monthly payment as payable for child support. Certainly our authority to look behind the order for alimony does not go further than the scope of *Gloria P. Johnson*, 45 T.C. 530 (1966). In that case the record of the divorce proceeding indicated that the trial judge intended that an order fixing child support payments be entered. The divorce decree did not contain such a provision, and Mrs. Johnson obtained a *nunc pro tunc* decree several years later which corrected the mistake retroactively. In this case, the decree of May 7, 1970, though stating that the decree of 1965 did not reflect the agreement of the parties, did not cure the defect retroactively. In addition, we have not been provided with any record from the 1965 proceedings which would indicate that the court at that time intended to fix specific child support payments. Accordingly, no part of the payments received under the 1965 decree constitutes child support payments which are excludable by petitioner under section 71(b).

Although no part of the payments is excludable under section 71 (b), not all of the payments are taxable to petitioner. Petitioner was required by the 1965 decree to make mortgage, insurance, and local tax payments with respect to the residence which she owned as a tenant in common with Charles. Because petitioner owned only an undivided one-half interest in the property with no right of survivorship, one-half of these payments protected or increased Charles' equity in the residence. Accordingly, respondent has conceded that petitioner is not taxable in an amount equal to one-half of the payments. Petitioner made $1,232.01 of such payments in 1966 and $1,350.19 of such payments in 1967. Rev. Rul. 62–39, 1962–1 C.B. 17. Our decisions are consistent with this treatment. *James Parks Bradley*, 30 T.C. 701 (1958) ; and *Hyde* v. *Commissioner*, 301 F. 2d 279 (C.A. 2, 1962), affirming 36 T.C. 507 (1961).

Because one-half of the payments made with respect to the residence were for the benefit of Charles and were paid with money that was not taxable alimony to petitioner, petitioner is entitled to only one-half of the allowable deductions with respect to the residence. In effect, Charles made the other half of the payments with his own money. Accordingly, petitioner will be deemed to have paid only one-half of the interest and local property taxes on the residence.

The briefs of the parties indicate that there may have been adjustments to petitioner's deductions which do not appear upon the record. Accordingly, the parties shall determine whether petitioner will benefit most from itemized deductions or the standard deduction.

*Decision will be entered under Rule 50.*