ANITA L. ELLIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ellis v. Commissioner
Docket No. 4573-71
United States Tax Court
T.C. Memo 1973-152; 1973 Tax Ct. Memo LEXIS 135; 32 T.C.M. (CCH) 736; T.C.M. (RIA) 73152; July 11, 1973, Filed *135 Anita L. Ellis, pro se. John B. Harper, for the respondent. Dawson
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for the years 1966 and 1967 in the amounts of $947.77 and $1,028.87, respectively. Petitioner has not contested one of the adjustments contained in respondent's statutory notice of deficiency, but she has raised in an amendment to her petition an additional issue concerning 2 the treatment of insurance premiums paid to her by her former husband as alimony. In addition to this new issue, we must decide whether the petitioner is entitled to deductions for depreciation (1) for improvements on a rental home and (2) for the furniture and furnishings in the home. FINDINGS OF FACT Some facts have been stipulated by the parties. Their stipulation and the exhibits attached thereto are incorporated herein by this reference. Anita L. Ellis (herein called petitioner) was a legal resident of Memphis, Tennessee, when she filed her petition in she filed her Federal income tax returns with the district director of internal revenue at Nashville, Tennessee. In 1952, Robert *136 R. Ellis (herein called Robert) and the petitioner were husband and wife. In that year Robert purchased a house at 5012 Greenway Road in Memphis, Tennessee, from a custom home builder. The house was furnished with furniture and accessories purchased from 1949 to 1959. Most, but not all, of the furnishings had been purchased by 1952. All the upholstered furniture, as well as the dining room table, was custom made in the sense that it was manufactured pursuant to petitioner's purchase order but not according to her design or her individual needs. However, none of the pieces were one-of-a-kind items. 3 Robert generally handled finances in the family, including the payments for any improvements made to the house after its purchase in 1952. Furniture and furnishings purchased by the couple were paid for partly by petitioner and partly by Robert. On March 9, 1959, petitioner obtained a divorce from her husband. The decree provides in part (1) that petitioner would obtain all right, title and interest to the house on Greenway Road, all improvements to the house, and all furniture, furnishings and fixtures on the premises, (2) that her former husband would maintain policies *137 of ordinary life insurance on his life in the aggregate amount of $10,000 with petitioner as the irrevocable beneficiary as well as the irrevocable assignee of the policy or policies, that she would have the right to designate any alternate or contingent beneficiaries, and that he would pay all premiums for the rest of his life so long as she remained alive and single. [1]
*138 4 During 1967, Robert paid $495.40 to the Manhattan Life Insurance Company for premiums on an ordinary life insurance policy covering himself. On her 1967 Federal income tax return the petitioner included the $495.40 in her gross income. On March 24, 1971, petitioner filed a claim for refund for income tax paid on the $495.40. The claim had not been denied on the date the petition was filed. (There is no explanation as to whether Robert paid any premiums in 1966 and, if so, how the petitioner treated such payments.) On April 1, 1959, petitioner converted the Greenway Road house to rental property. From that date until sometime in 1965, petitioner rented the house whenever a suitable tenant could be found. Petitioner 1965 and for the first 9 months of 1966. The property was again converted to rental property at the beginning of October 1966 when it was rented for 2 months. It was vacant from December 1, 1966, to May 31, 1967. From June 1, 1967, until it was sold in July 1972, the house was rented whenever a suitable tenant could be found. On or very shortly before June 1, 1967, over half the furniture and household furnishings in use at the house were removed and *139 never returned. A substantial amount of that removed was used 5 by petitioner in her apartment. The furniture and furnishings remaining at the house on that date were stored in the attic. Left in the attic were two single beds, a buffet, a sofa and some living room furniture, several rugs, some end tables, a coffee table, some personal belongings and books, and various decorating items. Effective September 30, 1966, petitioner insured the house for $50,000 and the personalty in it for $35,000. Effective September 30, 1968, she insured the house for 1 year for $50,000 and the personalty for $17,500. Under the same policy the petitioner's furniture in her apartment was insured for $17,500. Prior to the normal expiration of this policy, but subsequent to a revenue agent's examination in connection with this case, petitioner insured her house with another insurance company for $65,000. The contents were insured for $15,000. This policy was effective January 10, 1969. Petitioner sold the Greenway Road property on July 11, 1972, for $70,000. Petitioner is, among other things, an architectural and interior designer in the commercial field. In 1962 a newly constructed *140 luxury home in Memphis, Tennessee, with nice moldings, marble entrance hall, three and one-half baths, and 3,000 square feet could be purchased for $10 per square foot, 6 plus the cost of the lot. In 1967 a newly constructed luxury home containing 4,000 square feet could be built for $15 per square foot, including the lot, and purchased for $18 per square foot, including the lot. The house in question can be described in the following terms: It is located on a 188- by 200-foot lot. It has three bedrooms, dining room entrance hall, living room, utility room, kitchen, two pantries, breakfast room, den, two and one-half baths, powder room, and a garage. Including the garage, the house has 3,030 square feet. Outside the house there are a brick patio and terrace, a brick retaining wall at the street, a brick driveway, and brick walkways. The outside brickwork was constructed at or near the time petitioner and Robert moved into the house. Landscaping, outdoor lighting, and interior improvements were added later by petitioner and her husband. The brick retaining wall was constructed by the City of Memphis at its expense. The house was air-conditioned and the attic floor was *141 finished. The fair market value of the house and the so-called improvements, some of which were actually repairs, did not exceed $50,400 as of April 1, 1959, the date of conversion. With regard to the furniture and household furnishings, an item-by-item analysis reveals that while a few pieces were of such a quality that they actually appreciated in value, most of them 7 depreciated in value due to ordinary wear and tear. On the crucial date of conversion the total fair market value of all the furniture and furnishings did not exceed $24,975. Petitioner's house and improvements have been depreciated over a 25-year life; the furniture has been depreciated using a 10-year life. The straight-line method of depreciation has been used. In computing depreciation, petitioner did not take into consideration the salvage value of her furniture and furnishings. The depreciation schedule on petitioner's 1966 Federal income tax return showed the following: Property
Basis
Depreciation Allowed in Prior Years
Depreciation Deduction House
$45,000.00
$12,700.00
$1,800.00
Improvements
20,000.00
5,400.00
800.00
Furniture
37,000.00
24,975.00
3,700.00
*142 The same schedule on her 1967 Federal income tax return read as follows: Property
Basis
Depreciation Allowed in Prior Years
Depreciation Deduction House
$45,000.00
$14,500.00
$ 1,800.00
Improvements
20,000.00
6,200.00
800.00
Furniture
37,000.00
28,675.00
3,700.00
In 1961 petitioner's 1960 Federal income tax return, including the depreciation schedule on the Greenway Road rental property, was examined by the Internal Revenue Service in New York. Initially, total expenses on the rental property were disallowed. However, 8 in 1963, some 21 months later, deductions for all expenses connected with the property were allowed as claimed.The deficiency ultimately determined was $49.69. In 1966 petitioner's 1963 and 1964 returns, again including the depreciation schedules on the rental property, were examined by the Internal Revenue Service in Memphis, Tennessee. Petitioner subsequently received notice that no changes were being made and no deficiency was determined. The returns were accepted as filed. In 1968 petitioner's 1966 and 1967 returns, including the depreciation schedules pertaining to capital improvements on and furniture and *143 furnishings in the rental property, were examined. An internal revenue agent, who was an accountant but not an expert appraiser, worked on the matter. During the course of his investigation he inspected the house and property on Greenway Road in the company of the current tenant. At that time the furniture and furnishings belonging to the petitioner were partly in storage in the attic and partly in use in petitioner's apartment residence. In his statutory notice of deficiency dated March 30, 1971, respondent did not allow the depreciation deductions claimed in 1966 and 1967 for improvements on the house and for the furniture. The explanation appearing in the notice is merely an abbreviated version of the explanation accompanying the revenue agent's 9 examination report. Two parts of the latter explanation are set forth below: (a) Depreciation of furniture 1966 / $3,700.00 1967 /$3,700.00 on household furniture of a rental house. This adjustment was caused by the taxpayer using cost of the furniture, whereas, the Regulation 1.167(g)-1 states in part: "In the case of property which has not been used in the trade or business or held for the production of income and which *144 is thereafter converted to such use, the fair-market-value on the date of such conversion, if less than the adjusted basis of the property at that time, is the basis for computing dpreciation." In this case Mr. and Mrs. Ellis purchased a home at 5012 Greenway Road, Memphis, Tennessee, in 1952, and subsequently purchased furniture in an estimated amount of $37,000.00. Mr. and Mrs. Ellis used the home for a personal residence until 1959 when a divorce was granted. Sometime in 1959 the property was converted by Mrs. Ellis into rental property and a basis was used on the furniture in the amount of $37,000.00. This figure has not been substantiated and it has been found that household furniture seven years old would not have a fair-market-value equal to the prior depreciation claimed; which is $21,275.00. (b) Depreciation of improvements 1966 / $800.00 1967 / $800.00 The depreciation has been disallowed on the amounts claimed as improvements. The taxpayer did not substantiate the basis of the improvements, and it is believed that the cost of the building would include all the allowable basis subject to depreciation. The taxpayer presented pictures of various items claimed as *145 improvements and large amounts claimed for her personal services. Personal services of a taxpayer would not be an adjustment to the basis of property. 10 OPINION 1. Life insurance premiums. The first question for decision is whether the amount of the insurance premiums paid by petitioner's former husband in 1967 is includable in her gross income for that year as alimony. Although she originally reported the contested amount on her return, petitioner has claimed an overpayment in her amended petitioner. Respondent has denied the claimed overpayment. We hold that the premiums paid by Robert are taxable to the petitioner. As a former wife who was at the relevant time divorced from her husband under a decree of divorce, her gross income includes all periodic payments received after entry of the decree in discharge of a legal obligation which, because of the marital relationship, is imposed on the husband under the decree. Section 71(a) (1). Life insurance premiums qualify as payments discharging an imposed obligation within the rule where (1) the former wife is named as the irrevocable beneficiary and (2) the policy is irrevocably assigned to her. Katharine T. Hyde, 36 T.C. 507 (1961), *146 affirmed 301 F. 2d 279 (C.A. 2, 1962); Anita Quinby Stewart, 9 T.C. 195 (1947). Compare Rev. Rul. 57-125, 1957-1 C.B. 27 with Rev. Rul. 70-128, 1970-1 C.B. 19. In this case the petitioner was not only the irrevocable beneficiary and assignee of the policy, but she was also endowed with the right to designate an alternate or 11 contingent beneficiary. And we note that the payments were periodic in the sense that Robert was obligated to pay them for an indefinite period, i.e., the remainder of his life. See Lemuel Alexander Carmichael, 14 T.C. 1356 (1950). 2. Deductions for depreciation. (a) Improvements to rental property. The question is whether the petitioner is entitled to any additional deductions for depreciation of the alleged improvements. Petitioner claims that the fair market value of the improvements as of the date of conversion to rental use was $20,000. Since converting the property, she has taken deductions for depreciation totaling $5,400. In each of the years at issue she claimed a deduction of $800. Respondent disallowed the deductions as unsubstantiated. We think the respondent's decermination *147 is correct. Petitioner has failed to convince us that she is entitled to the amounts claimed. It appears that the value of the improvements is reflected in the uncontested value of the rental home. Some of the improvements are more in the nature of repairs. The value of her personal efforts that have been "poured into" the property cannot be added to its adjusted basis. Our conclusion is supported by the evidence of the eventual selling price of the house and the insurance values placed on the house. (b) Furniture and furnishings. The final issue is whether the petitioner is entitled to any additional deduction for the 12 depreciation of her furniture and furnishings. She claims a deduction of $3,700 in both 1966 and 1967. In the past she has received a total write-off of $24,975. Petitioner claims that the furniture cost approximately $42,500 and that it was worth $37,000 at the time of conversion to rental use.The former figure is made up of the following approximate itemized amounts: $18,000 for furniture, $1,000 for crating and shipping; $11,000 for accessories (including over $2,000 for slipcovers), $900 for lamps, $1,200 for appliances, $2,000 for draperies, $3,200 *148 for rugs, $4,000 for china, crystal, and silverware. The latter figure reflects a 10-percent depreciation of the cost figure. No salvage value was accounted for. Respondent asserts that some of petitioner's figures are inflated; that salvage value must be considered; that some of the costs - e.g., crating and shipping - cannot be added to adjusted basis; and that the fair market value of these items was less than that claimed due to economic depreciation between the dates of purchase and the date of conversion. In the alternative, respondent asserts that any deduction for depreciation allowed the petitioner must be reduced to reflect the fact that part of the time she lived in the house and part of the time some of the furniture was stored in the attic of the house and some was used by her in her apartment. 13 While we agree with respondent's alternative approach, we rest our conclusion on his primary arguments. Respondent's determination is sustained. In our judgment the petitioner has already had a full measure of tax benefits from the furniture and furnishings through depreciation. Decision will be entered for the respondent. Footnotes
1. The pertinent provision of the divorce decree provides as follows: (e) Defendant shall maintain policies of ordinary life insurance on his life in the aggregate amount of $10,000.00, in which policy or policies petitioner shall be the irrevocable beneficiary, and that ownership of said policy or policies shall be irrevocably assigned to petitioner; provided, further, that defendant shall maintain the premiums on said insurance during his natural life, except in the event of or the death or remarriage of petitioner, in either of which events defendant shall not be liable for the payment of the premiums on said insurance policy or policies; and provided, further, that petitioner shall have the right to determine the alternate, contingent or other beneficiaries, in addition to herself, in said policy or policies; and ↩