T.C. Memo. 1999-340


UNITED STATES TAX COURT


VIRGINIA M. MARTEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DAVID E. LANE AND DONNA P. LANE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 3401-97, 16223-97.   Filed October 12, 1999.


Woodford G. Rowland, for petitioner in docket No. 3401-97.

John E. Cassinat, for petitioners in docket No. 16223-97.

Christian A. Speck, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  By separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 3401-97 | 1993 | $7,238 |
| | 1994 | 9,254 |
| 16223-97 | 1993 | 9,160 |
| | 1994 | 10,442 |

These cases have been consolidated for purposes of trial, briefing, and opinion.

After concessions,[1] the issue for our decision is whether payments made by petitioner David E. Lane on a life insurance policy are alimony within the meaning of section 71.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. At the time of the filing of their petitions, petitioner Virginia M. Marten (Ms. Marten) and petitioners David E. and Donna P. Lane (Mr. and Mrs. Lane) resided in Sacramento, California.

In 1953, Mr. Lane and Ms. Marten married. During their marriage, Mr. Lane had a successful real estate appraisal

---

[1] Ms. Marten failed to argue in her petition, at trial, and in her posttrial briefs that the premiums paid by Mr. Lane on her health insurance policy did not constitute alimony. We therefore find that Ms. Marten concedes this issue. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

business, and Ms. Marten worked in the home. They had four children. When Niklas, their youngest child, was 4½ years old, he nearly drowned and, as a result, became a quadriplegic. Until the end of his life, Niklas required 24-hour care, and Ms. Marten was his full-time care provider.

On or about January 16, 1979, Mr. Lane and Ms. Marten legally separated. At all times thereafter, they were no longer members of the same household.

On September 1, 1982, and after 3 years of separation from Ms. Marten, Mr. Lane purchased a $750,000 life insurance policy from Federal Kemper Life Assurance Co. ($750,000 policy) on his own life. He named Ms. Marten the owner and beneficiary of the policy. The policy provided that the contingent beneficiary was "In trust for the care of Niklas D. Lane, son, pursuant to testamentary trust to be established in my will."

Contemporaneously, a $250,000 life insurance policy ($250,000 policy) was purchased on Ms. Marten's life. This policy named Mr. Lane primary beneficiary, and the contingent beneficiary was "In trust for Niklas D. Lane, son, pursuant to testamentary trust to be established in my will." The purpose of the $250,000 policy was to help care for Niklas if Ms. Marten predeceased Niklas or Mr. Lane.

On or about April 20, 1983, Mr. Lane filed for divorce. On March 20, 1984, the Sacramento County Superior Court (the

Superior Court) dissolved the marriage of Mr. Lane and Ms. Marten. On April 11, 1984, in a dissolution proceeding, the Superior Court entered an order for child support and spousal support (the support decree). Under the support decree, Mr. Lane was required to pay all reasonably incurred health care expenses for Niklas plus $500 per month (later increased to $2,000 per month) in child support and $3,000 per month in spousal support. Mr. Lane was also required to continue paying the premiums on all existing health and life insurance policies naming Ms. Marten and Niklas as beneficiaries.

On January 27, 1987, the Superior Court rendered a Judgment After Bifurcation as to All Reserved Issues in the dissolution proceeding (the modified decree). Among other things, the modified decree required Mr. Lane to continue paying spousal and child support as directed in the support decree. The modified decree further required Mr. Lane to continue paying the premiums on all insurance policies naming Ms. Marten and Niklas as beneficiaries.

During 1993 and 1994, Mr. Lane made payments on the $750,000 policy totaling $25,841 and $30,576, respectively. In 1994, Mr. Lane also made payments on a health insurance policy maintained for Ms. Marten totaling $2,484. Mr. Lane deducted these payments as alimony on his 1993 and 1994 Federal income tax returns. Ms.

Marten did not include these payments as income on her 1993 and 1994 Federal income tax returns.

Niklas died on June 19, 1995.

OPINION

The sole issue for decision is whether premiums paid by Mr. Lane on the $750,000 policy were alimony. If the payments are alimony, Ms. Marten must include the payments in her gross income, and Mr. Lane is entitled to deduct these payments. See secs. 61(a)(8), 215(a). However, if the payments are not alimony, Ms. Marten need not include the payments in income, and Mr. Lane cannot deduct them.

The parties argue that our analysis should focus on section 71(b) as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422, 99 Stat. 494, 795 (the DRA '84). The DRA '84, however, is applicable only to divorce instruments executed after December 31, 1984, or modified after December 31, 1984, where the modified instrument states that the amended version of section 71 will apply. See Deficit Reduction Act of 1984, supra at 798. In the present case, the support decree was entered on April 11, 1984, and the modified decree--entered January 27, 1987--did not provide that the amended version of section 71 was applicable. We, therefore, must apply former section 71 in determining whether the premium payments constitute alimony.

Former section 71(a)(1) provided:

If a wife is divorced or legally separated from her husband under a decree of divorce * * *, the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

Section 215 generally allows a husband a deduction for payments made to his wife which are includable in his wife's gross income under section 71.

To qualify as alimony under the applicable version of section 71(a)(1), the payments must be (1) imposed or incurred by the husband under a decree of divorce or separation or a written instrument incident to such divorce or separation, (2) the payments must be made in discharge of a legal obligation based on the marital or family relation, and (3) the payments must qualify as periodic payments.

Mr. Lane's premium payments were periodic and pursuant to the support decree and modified decree. Life insurance premiums qualify as payments discharging an imposed obligation within section 71(a) when (1) the former wife is named as the beneficiary and (2) she is the owner of the policy with the former husband retaining no incidents of ownership. See Hyde v. Commissioner, 301 F.2d 279, 281 (2d Cir. 1962), affg. 36 T.C. 507 (1961); Stewart v. Commissioner, 9 T.C. 195, 197, 198 (1947);

Ellis v. Commissioner, T.C. Memo. 1973-152.  In the present case, Ms. Marten was the primary beneficiary and the named owner of the $750,000 policy.  Ms. Marten had sole power to change the beneficiary on the policy.  Thus, the premium payments were paid by Mr. Lane in discharge of a legal obligation because of the marital or family relationship.  We conclude that the premium payments satisfy all of the elements of section 71(a) and constitute alimony.  Ms. Marten must include the premium payments in income, and Mr. Lane is entitled to deduct the premium payments.

Ms. Marten argues that the $750,000 policy was intended to provide for Niklas' support and thus cannot be alimony.  According to former section 71(b), payments fixed as support for minor children were not alimony.  In Commissioner v. Lester, 366 U.S. 299, 301 (1961), the U.S. Supreme Court held that in order for a divorce decree to "fix" an amount as child support under former section 71(b) the decree must expressly specify or fix the amount of each payment which is for child support.  The Court held that absent such an express allocation, the entire payment is alimony and taxable to the wife.  See Commissioner v. Lester, supra.[3]

---

[3]  Although Congress modified the result in Commissioner v. Lester, 366 U.S. 299 (1961), by the amendments to sec. 71

(continued...)

The support decree and modified decree fail to state expressly that the premiums on the $750,000 policy were for child support.  Although it appears that at least part of the premium payments was to ensure Niklas' continued care, under Lester, "the allocations to child support made * * * [within the divorce instrument] must be 'specifically designated' and not left to determination by inference or conjecture."  Id. at 306.  Pursuant to Lester, we must conclude that the premium payments are taxable to Ms. Marten as alimony.   To the extent not herein discussed, we have considered all other arguments made by the parties and find them to be meritless or moot.

To reflect the foregoing,

> Decision will be entered for respondent in docket No. 3401-97.

> Decision will be entered for petitioners in docket No. 16223-97.

---

[3](...continued)
provided in the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422, 99 Stat. 494, 795, the amendments apply to divorce instruments executed after Dec. 31, 1984; therefore, Lester is applicable to the present case.